OPINION OF THE COURT
Bellacosa, J.
 In two distinct cases, defendants appeal, challenging the admission of allegedly suggestive station house showup *527 identifications and resultant in-court identifications made at trial. The showup identification evidence in each case was suggestive as a matter of law and was erroneously admitted at the respective trials. Independent source evidence was not presented at the suppression hearings in either case as a matter of prosecutorial preference, so the affected in-court identifications were necessarily tainted and erroneously admitted as well.
I. People v Riley
On March 9, 1984, Ethel Glover was approached by two men with a gun in the hallway of her apartment building. The men took her jewelry, her black pocketbook and a black .duffel bag. As the two men ran from the building, Darryl Marant, a friend of Glover, saw the two flee in a blue Lincoln Continental. He noted the license plate number. Glover and Marant immediately notified the police.
A description of the car was communicated over police radio and two officers in the vicinity of Glover’s apartment spotted a car matching the broadcast description. The officers approached and ordered defendant Riley and his codefendant Jones out of the car. A frisk revealed an imitation revolver and some jewelry. The police also recovered two black bags from the car.
In the meantime, Glover and Marant, standing outside the apartment house waiting for the police to arrive, saw a police officer approaching. They stopped him and, while he was writing down the report, a call came over the radio indicating that the police had just caught "the two guys”. The officer then drove Glover and Marant to the station house. As they pulled up, Glover saw two officers get out of a car holding two black bags. The officers held up the bags and asked Glover if they were hers. She said they were.
Inside the station house, Riley and Jones were being held in a room while their arrests were being processed. The recovered items were laid out on a table near the suspects. The police ushered Glover into the processing room, where she identified the stolen property and the gun. The police then asked her if there was anyone in the room she recognized. She pointed to Riley and Jones, the only nonuniformed persons in the room. Marant subsequently made the same identification under identical circumstances.
At the Wade hearing (388 US 218) neither the victim nor *528 the eyewitness testified. Based on the sole testimony of the arresting officer, the trial court ruled that the showup identifications were reliable because they were made soon after the crime took place. At trial, evidence of the showup identification was introduced and the victim and eyewitness were also permitted to make in-court identifications of the defendant. Defendant was convicted and the Appellate Division affirmed, stating, "in view of the overwhelming evidence of guilt, reversal is not warranted”. (127 AD2d 458.)
II. People v Rodriguez
Shortly after midnight on May 18, 1983, defendant Rodriguez and two others, Garcia and Laffman, hailed a taxicab in New Jersey and directed it into New York City. When it came time for the trio to exit the cab, they overpowered the driver Malik, and forced him at knife point into the back seat. They subsequently drove the cab around Manhattan, alternately threatening, beating and stabbing Malik in the leg when he was unable to produce more than $35. They then locked Malik in the trunk of the cab and, over the next three hours, drove to various banks attempting to get money with Malik’s credit card before finally returning to New Jersey. Malik pried the trunk open enough to stick his fingers out and get the attention of a motorist who alerted the police. A high speed chase ensued, during which one of the pursuing officers had an extended opportunity to observe Laffman in the back seat of the cab. At 4:05 a.m., the participants abandoned the cab. Malik was freed from the trunk, taken to a hospital for treatment of the stab wounds and then to the Bloomfield, New Jersey, State Police Barracks.
Malik was present when the detective interviewing him was informed by another officer that two suspects were being brought to the barracks. One of the transport officers was the officer involved in the chase and he conclusively identified Laffman. When Laffman and Rodriguez arrived, the interviewing detective had Malik come to the door of his office where they could be seen in the nearby lobby. Malik simultaneously identified them as two of the participants in the crime. The two handcuffed suspects, in civilian clothes, were accompanied only by two uniformed officers. The showup identification occurred three to four hours after the criminal episode had ended.
A pretrial Wade (388 US 218, supra) hearing was held to *529 determine the admissibility of the showup identification. Testimony was given by the officer who identified Laffman in the chase and by the detective who was present at the showup. The detective testified that he decided on his own not to arrange a lineup. Malik did not testify at the hearing. At the conclusion of the hearing, the court found that no impropriety tainted the showup; that there were no acts of suggestiveness by the police; that there was sufficient proximity in time and place between the crime and the showup to hold that the showup was justifiable; that the prompt showup ensured that individuals unrelated to the crime would not be improperly detained and minimized the possibility of irreparable misidentification.
Evidence of the showup and of an in-court identification by the victim taxi driver Malik were admitted at the jury trial. Rodriguez was convicted of robbery in the first degree, robbery in the second degree, kidnapping in the second degree, and assault in the second degree. The Appellate Division affirmed.
III. THE PRECINT SHOWUPS
Showup identifications, by their nature suggestive, are strongly disfavored but are permissible if exigent circumstances require immediate identification (People v Rivera, 22 NY2d 453), or if the suspects are captured at or near the crime scene and can be viewed by the witness immediately (People v Love, 57 NY2d 1023). Generally, a showup identification will be inadmissible when "there was no effort to make the least provision for a reliable identification and the combined result of the procedures employed” establish that the showup was unduly suggestive (People v Adams, 53 NY2d 241, 249).
Unreliability of the most extreme kind infects showup identifications of arrested persons held at police stations, and the evidence will be inadmissible as a matter of law unless exigency warrants otherwise.
In Adams, this court referred to the indicia of the precinct showup as the "ideal of suggestibility” (id., at 249). The indicia were multiple witnesses, who had been informed that the robbers were in custody, simultaneously viewing at a station house multiple suspects who were physically restrained by uniformed police officers with no other persons dressed in plain clothes present, at a time and place which were not proximate to the crime, when there was no evidence *530 that a lineup would have been unduly burdensome (id., at 248-249). While Adams had two additional exploitive factors not present in the instant cases — a showup before multiple witnesses who tend to reinforce one another psychologically and the fact that Adams, who was arrested at home, was subject to a showup with a codefendant arrested at the scene of the crime, increasing the likelihood of a misidentification by association — there was heightened suggestiveness in these two cases not present in Adams. In Riley, the stolen property and the gun were set on a table near the suspects; in Rodriguez, the defendants were handcuffed at the time of the showup.
Additionally, in both these cases the police explanation for arranging suggestive station house showups is not supportable and they failed to establish that lineups would have been unduly burdensome. In Riley, the only proffered reason for failing to conduct a lineup was that the station house was undergoing renovation. In Rodriguez, the justification for not conducting a lineup was to minimize the length of detention of suspects who may have been innocent. As a matter of law, neither excuse constitutes "exigency” and they are insufficient to establish that it would have been unduly burdensome to conduct a reasonably reliable lineup identification procedure instead of resorting to inherently suggestive station house showups. The patently exploitive and suggestive circumstances presented in each case demonstrate the vice of such procedures and reinforce the decision we reach.
The showup evidence in each case was inadmissible because "under no view of the evidence could it be said that the station house identification was not suggestive” (People v Adams, 53 NY2d 241, 248, supra). We hold that it was reversible error to admit the showup identification evidence in these cases because, under Adams, these precinct showup identifications are unreliable as a matter of law and law enforcement authorities may not resort to precious parsing and fact patterns differentiations.
The importance of identification evidence is, of course, self-evident. But then so, too, are the weaknesses and dangers of improper identification evidence. "The influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other factor — perhaps it is responsible for more such errors than all other factors combined” (Wall, Eye-Witness Identification in Criminal Cases, at 26, quoted in United States v Wade, 388 US 218, 229, *531 supra). The complex psychological interplay and dependency of erroneously induced identification evidence via showups, lineups, various bolsterings and the like must be vigilantly guarded against because this kind of error drives right into the heart of the adjudicative guilt or innocence process affecting the person accused and identified. Thus, constitutional, statutory and decisional safeguards have been erected essentially to insure reliability of this most potent evidence (United States v Wade, id.; Stovall v Denno, 388 US 293; People v Adams, 53 NY2d 241, supra).
It is with this foundation that we build on the Adams rationale and strike down in each case police station showup identification evidence. We move to this conclusion because precinct showup procedures should have almost no place in acceptable identification procedures, unless exigency warrants them. The People must bear the heavy burden of overcoming the inevitable suggestibility of the combined setting and showup. Avoiding the threshold locational impediment does not end the prosecutor’s burden, however, because apart from showing the emergent need to conduct a showup in a precinct at all, the prosecution must also address the inextricably implicated companion problem — the inherent unreliability of a showup itself. They must therefore also demonstrate to a court what steps were taken to insure that the identifications in the particular case were free of both the basic unreliable suggestiveness and of exacerbating exploitation.
The inadmissibility of the showup identification evidence alone, however, does not preclude admission of identifications subsequent to the showup ones if they, in turn, are justified by independent source reliability standards and if they are otherwise authorized.
IV, IN-COURT IDENTIFICATIONS
In-court identifications of Rodriguez and of Riley by the respective victims were "also improperly admitted as there was no evidence at the suppression hearing [in either case] of an independent source” (People v James, 67 NY2d 662, 664). There can be no doubt about the necessity for this rule which the prosecution in each case failed to satisfy. Procedural preference or efficiency may not justify any less protection to the integrity of the process and to the particular defendant’s rights. When an eyewitness does not testify at a suppression hearing involving identification, the trial court lacks the basis *532 to make a finding as to whether an independent source exists for an in-court identification untainted by a prior suggestive viewing (id.; see also, People v Rahming, 26 NY2d 411). Nor may the People rely upon the trial record for appellate courts to correct omissions or fill gaps in pretrial prerequisites (People v Dodt, 61 NY2d 408). Thus, it was also reversible error to admit this kind of identification evidence in each case.
While the appropriate corrective action to be applied in these circumstances might present an additional problem, we conclude that, as part of the new trial direction in each of these cases, the respective defendants may have a new independent source Wade (388 US 218, supra) hearing because that is the specific relief in that regard which they sought.
v. CONCLUSION
Inasmuch as we are reversing in each case and there should be further proceedings, we note that in Rodriguez the defendant’s argument that the kidnapping count merged with the robbery count fails. While the restraint and asportation which occurred while defendant and his cohorts were trying to force Malik to turn over money may have merged with the robbery (People v Lombardi, 20 NY2d 266; People v Levy, 15 NY2d 159), the defendant’s additional activity of placing Malik in the trunk and driving around for approximately three hours continued well beyond the robbery and constituted the independent crime of kidnapping (People v Cassidy, 40 NY2d 763; People v Miles, 23 NY2d 527).
In Riley, the trial court also erred in its supplemental instruction to the deadlocked jury that it, the court, "could have decided this case in ten minutes” or less and that the jurors should not "go in with a feeling that the person is guilty or not guilty” (People v Pagan, 45 NY2d 725).
Other issues raised by the respective defendants are either without merit or unpreserved. Accordingly, in each case the order of the Appellate Division should be reversed, the motion to suppress the identifications granted, and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
In each case: Order reversed, etc.