THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD JORDAN, Appellant.—Judgment unanimously reversed on the law, defendant's motion to suppress granted and new trial granted, in accordance with the following memorandum: Defendant was convicted of robbery in the third degree in connection with the forcible theft of a purse and its contents from a woman walking on Humboldt Parkway in the City of Buffalo. He contends on appeal that all evidence derived from the police station showup should have been suppressed. We agree and grant defendant's motion to suppress that evidence and order a new trial.

Approximately 25 minutes after the commission of the crime, defendant and his two companions were apprehended by police and transported to Precinct 17 police station. The victim and two eyewitnesses viewed the three suspects together through a glass-tinted door used for identification purposes. The three suspects were surrounded by uniformed police officers with no other persons dressed in plain clothes present. One eyewitness, Vernon Davenport, stated that the assailant wore a different hat or cap than the head cover then worn by defendant. He noted that the hat worn by the assailant was black in color, similar to the hat then worn by one of the other suspects. Defendant and that suspect were told to switch hats. At that point, another eyewitness, Kerwin Kelley, said that defendant looked like the assailant but he could not make a positive identification because he had not seen the assailant's face. Davenport then said "I am almost positive that's the guy". The victim was unable to identify defendant as the assailant.

Neither the victim nor either eyewitness testified at the *Wade* hearing *(United States v Wade,* 388 US 218). Based solely on the testimony of the arresting officer, the trial court ruled that the police station showup was not impermissibly suggestive and that it would not suppress Kerwin Kelley's testimony with respect to his general observations derived from the showup.

At trial, Kelley gave extensive identification testimony with respect to the showup. He testified that as he observed defendant at the showup he appeared "similar" to the assailant. The record is replete with references by the trial court and the prosecutor to Kelley's observation of defendant at the showup.

The Court of Appeals has said that "[u]nreliability of the most extreme kind infects showup identifications of arrested persons held at police stations, and the evidence will be inadmissible as a matter of law unless exigency warrants otherwise" *(People v Riley,* 70 NY2d 523, 529). When the police conduct a precinct house showup, the People have a dual burden. They must show "the emergent need to conduct a showup in a precinct at all" and must demonstrate that the identification was "free of both the basic unreliable suggestiveness and of exacerbating exploitation" *(People v Riley, supra,* at 531; *see also, People v Farraro,* 144 AD2d 976, 977). When the People fail to satisfy their dual burden, all evidence derived from the improper showup must be excluded *(People v Adams,* 53 NY2d 241, 250-251).

Here, the People made no claim of exigency warranting a police station showup and no effort was made to justify the failure to conduct a lineup *(see, People v Riley, supra,* at 530). Moreover, the circumstances of the showup were exploitive and unreliably suggestive as a matter of law *(see, People v Riley, supra,* at 531).

We have reviewed defendant's remaining contention and we find it to be lacking in merit. (Appeal from judgment of Erie County Court, McCarthy, J.—robbery, third degree.) Present— Callahan, J. P., Doerr, Green, Balio and Davis, JJ.