■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WENDELL Cox, Appellant.—Judgment of the Supreme Court, New York County (Stephen Crane, J., at suppression hearing and at trial with a jury), rendered on or about January 7, 1988, convicting defendant of robbery in the second degree and grand larceny in the fourth degree and sentencing him to concurrent indeterminate terms of imprisonment of 4 to 8 years and 1½ to 3 years, is unanimously affirmed.

The principal issue on appeal is whether the precinct house identification procedure arranged by the police was a suggestive showup or an acceptable confirmation of an earlier identification by the complaining witness. We conclude it was the latter because of the short span of time between the incident, the intervening procedure, and the contested precinct house identification.

Within minutes after the victim had been surrounded on the street and robbed, defendant was in custody. In the intervening minutes the victim watched the attackers walk away, reported the crime to a nearby officer, followed the officer's pursuit, and then saw the attackers, save one, submit to the officer's authority. At the precinct, several minutes later, the victim identified his five attackers as they were individually paraded past him.

Precinct house showups are condemned in the absence of exigent circumstances *(People v Riley,* 70 NY2d 523), but the facts of this case are distinguishable. The procedure at the precinct house was not the first time that the victim saw the accused after the crime. *(Cf., People v Morales,* 37 NY2d 262.)

Unlike the circumstances in *People v Lorick* (142 AD2d 501), here no danger of an irreparable misidentification existed. There was no significant break between the incident and the two identification procedures. Further, on appeal defendant essentially contests his part in the incident, not his identification. Insofar as defendant argues that the second procedure was unnecessary, we note the recognized role of out-of-court identification procedures in criminal trials. *(See,* CPL 60.30.)

Defendant's remaining contentions are meritless. Counsel provided meaningful representation. *(People v Baldi,* 54 NY2d 137.)* Counsel's efforts throughout this case were marked by an understanding of the facts and issues, and vigorous advocacy. We find defendant's focus on counsel's cross-examination of the arresting officer unhelpful hindsight.

Defendant's remaining claims are either unpreserved or meritless. Concur—Murphy, P. J., Ross, Kassal and Wallach, JJ.

Milonas, J., concurs in a separate memorandum as follows: Defendant was convicted, following a jury trial, of robbery in the second degree and grand larceny in the fourth degree and sentenced, as a second felony offender, to concurrent indeterminate terms of imprisonment of from 4 to 8 years and 1½ to 3 years, respectively. On appeal, defendant challenges, in part, the propriety of the identification of him by the complainant at the precinct house. In that regard, the trial court conducted a consolidated hearing in connection with the various motions to suppress identification testimony and statements submitted by defendant and four codefendants, at the conclusion of which all of the motions were denied in their entirety. The evidence at the hearing demonstrates the following insofar as is relevant herein:

At approximately 6:10 P.M. on August 4, 1987, Val Tennyson approached Police Officer Van Brown while he was standing on the northwest corner of West 42nd Street and Eighth Avenue in Manhattan. According to Tennyson, he had just been robbed of $100 by a group of five black men, whom he pointed out; they appeared to be the only group of black men in the area. Officer Brown, recalling that he had earlier noticed the same men in the same location, thereupon radioed for assistance and ran across 42nd Street, Tennyson trailing behind him. The officer followed the group into a parking lot at the corner of 42nd Street and Eighth Avenue. The men, constituting the only such group in the lot, were behaving in a loud and boisterous manner and were also arguing with each

other. Tennyson, for the second time, pointed to the men, declaring that "[t]hose are the guys." Officer Brown drew his gun and announced, "Police, don't move." Holding defendant and three others, Alfonso Holmes, Eric Mungen, and Shadon Nixon, at gunpoint, the officer directed Tennyson to watch the fifth person, Philip Wilson, who was walking off toward the Port Authority Bus Terminal, and report his whereabouts to the backup officers when they arrived.

Police Officer Timothy McConnell received Officer Brown's transmission and rushed to the scene. He was hurrying up Eighth Avenue toward West 41st Street with his partner, Officer Terrence McGee, when he spotted Wilson. Tennyson ran up to Officers McConnell and McGee and, indicating Wilson, stated that "[h]e's one of them, he's one of them, get him, get him." The officers chased Wilson into the Port Authority Bus Terminal, where they placed him under arrest. Wilson was then handcuffed and taken to the precinct. He was still standing outside the station house as Officer Brown accompanied Tennyson inside the building; the other suspects had not yet arrived. Officer Brown instructed Tennyson that, as the prisoners were brought in, he should let the officer know whether they were the men who had robbed him. Each handcuffed suspect was subsequently escorted in separately by a police officer, 10 seconds apart, and Tennyson, hidden from their sight, identified them all as his assailants. Officer Brown testified that only some 10 minutes had elapsed between the robbery and the precinct showup. The five defendants were thereafter taken to a second-floor cell. Although a detective suggested that another viewing be arranged, as Tennyson approached the cell, the suspects started to create a commotion, and Tennyson was only able to glance in their direction for some two seconds before he was ushered away.

The trial court found, and the People contend, that the station house showup was merely confirmatory in nature. However, as the Court of Appeals observed in *People v Riley* (70 NY2d 523, 529):

"[s]howup identifications, by their nature suggestive, are strongly disfavored but are permissible if exigent circumstances require immediate identification *(People v Rivera,* 22 NY2d 453), or if the suspects are captured at or near the crime scene and can be viewed by the witness immediately *(People v Love,* 57 NY2d 1023). * * *

"Unreliability of the most extreme kind infects showup identifications of arrested persons held at police stations, and

the evidence will be inadmissible as a matter of law unless exigency warrants otherwise".

There were simply no exigent circumstances in the present situation to justify the two separate precinct identifications. Moreover, contrary to the prosecution's argument that one of the purposes of the identification procedures utilized herein was to preclude an innocent bystander from being swept up with the group, the facts herein do not demonstrate the possibility of a mistake since the complainant pointed out all five members of the group as the individuals who had robbed him, and there were apparently no other conceivable suspects in the vicinity. However, notwithstanding that no sweep arrest actually took place here, even assuming that the police had swept up a group of people from the street, a precinct showup would have been particularly unwarranted. In such an event, it is especially crucial that a lineup be arranged in order to facilitate accurate identification. Otherwise, there is a distinct possibility, even likelihood, that the showup in a custodial setting will merely serve to promote identifications based upon guilt by association since if one or more individuals are recognizable to the victim, the remaining members of the group must also be guilty. Additionally, defendant had already clearly identified his assailants, so a confirmatory identification was hardly warranted, and the only effect of the precinct showups was to bolster the prior identifications *(People v Lorick,* 142 AD2d 501, *appeal withdrawn* 73 NY2d 785).

Nonetheless, considering the totality of the circumstances herein, specifically the fact that Tennyson observed the suspects on the street over a period of time in clear daylight and, on several separate occasions, pointed them out to the police, there was virtually no chance that the station house showups increased the likelihood of a misidentification. Indeed, the problem with precinct showups in general, that is, their inherent suggestiveness and attendant unreliability *(People v Riley, supra),* has no real relevance in the instant matter in view of Tennyson's previous definitive street identifications. Therefore, while I believe that the station house showups which occurred here were improper and unnecessary, their impact upon the jury, taking into account the strong independent basis for the complainant's identification, was sufficiently attenuated to constitute harmless error *(see, People v Adams,* 53 NY2d 241, 252).