OPINION OF THE COURT
Caesar Cirigliano, J.
This decision follows a Wade hearing held upon the defendant’s motion to suppress identification testimony. The focus of the hearing was the station house showup that was con *436 ducted in this case. I found that the showup was conducted after the witnesses had identified the defendant on the street under circumstances that could not have been more reliable or conclusive. Accordingly, the showup identification was not suppressed as it was conducted merely to confirm the previous identification and would not increase the likelihood of misidentification at trial. With the Wade issue thus resolved, the identifications made on the street, at the showup and in court would, ordinarily, be received at trial and the matter concluded.
However, this case presents an infrequently addressed evidentiary question that deserves further consideration. The facts of this case strongly suggest that the repetition of the identification at the precinct house showup may serve only to improperly bolster the identification testimony. As Justice Milonas recognized in his recent concurrence in a similar case, "Additionally, [the victim] had already clearly identified his assailants, so a confirmatory identification was hardly warranted, and the only effect of the precinct showups was to bolster the prior identifications”. (People v Cox, 164 AD2d 779, 782 [1st Dept 1990] [Milonas, J., concurring].)
Under these circumstances, it has been suggested that "a Trial Judge might reasonably exercise his discretion to exclude testimony with regard to the station house identification, not because the defendant’s constitutional rights were violated, but because the probative value of the confirmatory identification of an already identified person is insufficient to justify a repetition of what is in essence a single identification.” (People v Lorick, 142 AD2d 501, 506 [1st Dept 1988] [Sandier, J., concurring].)
Here, I find it appropriate and necessary to weigh the probative value of the confirmatory showup against this prejudicial effect before this evidence is placed in front of the jury.
"Factors which play a part in measuring probative value are 'the degree to which the evidence persuades the trier of fact that the particular fact exists and the [logical] distance of the particular fact from the ultimate issues of the case’.” (People v Ventimiglia, 52 NY2d 350, 360 [1981].) An ultimate issue in this case is the accuracy of the identification of the defendant as the perpetrator. Accordingly, the probative value of the showup identification procedure must necessarily be measured by the extent to which it validly and reliably tests the accuracy of the witnesses’ perceptions and thereby persuades the trier of fact of the correctness of the identification.
*437 In characterizing showup identifications as being extremely unreliable, our courts have focused upon the suggestive nature of the procedure. (See, People v Riley, 70 NY2d 523, 529 [1987]; People v Adams, 53 NY2d 241, 249 [1981].) Here, suggestiveness is not in issue. However, it is also true that a one-on-one showup is simply not a reliable test of the witness’s perceptions. While a lineup compels the witness to carefully distinguish between a number of individuals of similar appearance and provides a reliable test of the witness’s ability to observe and recall the physical characteristics of the perpetrator, a one-on-one showup offers no such challenge to the viewer. Indeed, if a lineup is a multiple choice exam, a showup is a quiz to which the answer has already been given. As such, an identification made at a showup adds little, if anything, to the proof that the defendant was correctly identified as the perpetrator of the crime.
" 'On the issue of probative value * * * [the] necessity [for the evidence]’ ” must also be ascertained. (People v Ventimiglia, supra, 52 NY2d, at 360.) Therefore a significant factor to be considered in weighing the probative value of this evidence is the importance of this evidence to the People’s identification case. In this case the witnesses had identified the defendant on the street shortly before the confirmatory showup was conducted at the precinct. In light of the fact that testimony concerning the street identifications will be admitted at trial, evidence concerning the showup identification may be cumulative and unnecessary to the establishment of the identity of the perpetrator. To resolve this question, I turn to the facts of the case.
In this case, two witnesses, the driver of a Pepsi Cola truck and his assistant, were robbed by the same individual on two occasions in one month. Several weeks later, the complainants saw the perpetrator for the third time as he walked past their parked truck in broad daylight. They immediately and unequivocally identified this man to the police officer who was assigned to keep the Pepsi Cola truck under surveillance. The officer, who had been sitting in an unmarked car parked a short distance behind the truck, gave chase and apprehended the defendant 30 seconds later and one block away. The officer was certain, and the evidence makes clear, that the man he arrested was the same individual identified by the complainants.
Nonetheless, the arresting officer, acting perhaps in an *438 excess of caution, conducted what I found to be a confirmatory showup (see, e.g., People v Nixon, 162 AD2d 225 [1st Dept 1990]; People v Banks, 143 AD2d 677 [2d Dept 1988]; People v James, 138 AD2d 744 [2d Dept 1988]) at the precinct shortly after the street identifications were made.
The identifications made by these witnesses on the street were spontaneous and were completely free of any possible taint of police suggestiveness. The witnesses had a more than adequate opportunity to view the defendant and unequivocally identified him as the perpetrator of the robberies. There is no question that the person arrested moments later was the person identified by the complainants. Under these circumstances, the identifications made at the precinct are not necessary to the People’s case.
Certainly, the initial identifications made by the witnesses on the street are relevant and material to the question of identity as they will demonstrate that the witnesses identified the defendant as the perpetrator at a time when their memory of the events was fresh and their recollection of the physical characteristics of the perpetrator was unclouded by the passage of time. However, the subsequent identifications made at the precinct were only a repetition of the far more reliable identifications made on the street and, at best, this evidence is merely cumulative.
I therefore find that the showup identifications are of minimal probative worth and turn to consider the prejudice that may inure through the introduction of this evidence.
It is by now well settled that a witness may not testify at trial to having overheard an eyewitness make a pretrial identification of the defendant. (People v Trowbridge, 305 NY 471 [1953]; see also, People v Caserta, 19 NY2d 18, 21 [1966].) The prejudicial effect of the admission of such testimony is that the "mere repetition by a third party that an identification was made will improperly influence the jury’s belief in the reliability of the identification.” (People v Bolden, 58 NY2d 741, 743 [1982] [Gabrielli, J., concurring].)
At issue here is testimony by the identification witnesses regarding successive identifications made of the defendant, rather than testimony from "a succession of witnesses who swear that they saw and heard [the witness] identify the same person upon [a] previous occasion”. (People v Caserta, supra, 19 NY2d, at 21.) However, the prejudicial effect is very similar. (Cf., People v Morales, 37 NY2d 262; but see, People v *439 Wharton, 74 NY2d 921.) Though not suffering from the hearsay impediment that affects a Trowbridge violation, testimony regarding the identifications made at the showup may well create the illusory impression that much more by way of accurate evidence going to the question of identification was adduced than actually exists.
This is particularly true in the case of the showup conducted here which involved viewings made through a one-way mirror under the scrutiny of the police. The formality of the procedure, and its technical trappings, could well create an undeserved aura of trustworthiness. Any confidence in the accuracy of the identifications that is inspired by this testimony would be misplaced and would work an injustice here.
Indeed, if the jury is disinclined to credit the initial street identification which was made under reliable circumstances, it "should not be permitted to resolve its doubts by relying on the fact that the witnesses] had [confirmed their identification of the defendant] * * * under [the] inherently [unreliable circumstances that obtain in a precinct showup].” (People v Adams, 53 NY2d 241, 251 [1981], supra.)
Accordingly, testimony concerning the precinct house show-ups conducted in this case will not be received at trial.