OPINION OF THE COURT
Phylis Skloot Bamberger, J.
The defendant was charged with burglary in the second degree, assault in the third degree, and criminal trespass. He requested suppression of a station house showup identification by the complainant. The proceedings concerning the defendant’s motion disclosed that another identification procedure, a street showup of which no notice had been given pursuant to CPL 710.30, had taken place before the station house showup. This circumstance raised issues about the scope of preclusion remedy under section 710.30 (3). Two rulings concerning that sanction, not previously the subject of judicial opinion, are made here: (1) the People may not use an identification procedure precluded by section 710.30 (3) to meet their burden of going forward to show that another identification is admissible, and (2) an in-court identification is precluded when one out-of-court identification is not noticed pursuant to CPL 710.30 although another is properly noticed. The motion to suppress and preclude is granted.
PRIOR PROCEEDINGS
A hearing on the admissibility of testimony about the precinct identification began on August 29, 1990, and further evidence was taken on November 5, 1990. Police Officer John Horan and the complainant, Felicita Soto, gave testimony.
*490 The court credits the testimony given by Police Officer Horan about the precinct showup. On November 25, 1989, Police Officer Horan received a radio call at approximately 2:17 p.m., which led him to respond to 3289 Decatur Avenue. Once there, he learned from a crowd of people that a man in a black leather jacket had been chased a distance of at least a mile from Burke Avenue through a park to the rear yards between Decatur and Hull Avenues in the vicinity of 209th Street. Horan and his partner searched the area, found the defendant, and arrested him. One of the people in the crowd, representing that he had personally spoken to the complainant, told Horan that defendant had raped Soto.
Initially, Horan wanted to bring Soto to Decatur Avenue and ask her to identify defendant and he made arrangements to do this. However, a sergeant at that location decided that it would be better to take defendant to the precinct for his own safety. As a result, Horan put defendant in his patrol car and took him to the 52nd Precinct. On the way, Horan testified, he communicated by radio to two police officers attached to the 47th Precinct and arranged to have them bring Soto to the 52nd Precinct. Horan also learned, on the way to the precinct, that Soto had not been raped but that defendant was wanted for burglary.
By the time Horan got to the precinct at 2:40 p.m., Soto was already there. She was standing with two police officers "by” the steps to the precinct entrance about 50 feet from where Horan’s car was parked. One of the officers with Soto approached Horan and asked, "how do you want to handle this?” Horan replied that he would "walk the prisoner up the steps of the precinct and into the precinct.” Horan testified that he "took [it] for granted” that Soto had not yet identified the defendant when these arrangements were made. He did not ask the 47th Precinct officers to move Soto out of the way before bringing defendant inside because he wanted her to see defendant.
Defendant was taken out of the car and up into the precinct in handcuffs. Both Horan and his partner, who escorted defendant inside, were in uniform. They walked right past Soto, coming within 5 or 10 feet of her at the closest point.
Once inside, Horan began to fill out the arrest papers and then went out and asked Soto if she "recognized the guy we just brought in.” She said defendant was the one who had pushed his way inside her apartment.
*491 After Horan testified, this court ordered an independent source hearing to hear the complainant’s testimony because it had tentatively decided to suppress the precinct showup in light of People v Riley (70 NY2d 523 [1987]) and People v Gordon (76 NY2d 595 [1990]). At the independent source hearing, the complainant testified not only about her observations at the time of the crime and at the precinct but also about a previously undisclosed identification she made of defendant on 209th Street, before she arrived at the precinct.
Soto’s testimony concerning the police identification procedures was directly at odds with Horan’s testimony. According to Soto, the police came to her apartment and told her that they wanted to take her to look at a man to see if she could identify him. First, she was taken by the police to 209th Street. She was told that the police would take a man out of a police car and show him to her. When the police displayed the defendant to her, Soto identified him as the person who entered her apartment.
From 209th Street, Soto was taken to the 52nd Precinct and she again identified defendant. This time, Soto testified, she was inside the precinct by a staircase and the police took defendant out of a car, walked him past her, and put him in a room. Soto testified that when she identified him, he was wearing a red sweatshirt.
Soto’s testimony concerning the independent source was as follows: At about 2:00 p.m. on November 25, 1989, she returned from shopping to her apartment at 655 Burke Avenue. As she waited in the lobby for an elevator, Soto saw a man knock on the outside door and ask her to open it. Thinking that the man lived in the building, Soto let him in. She testified that she was within six inches of the man and could see his face clearly when she let him in. She saw him for "seconds” in natural lighting that was "very clear”.
The man stood about one foot from Soto as they waited for the elevator. Again, Soto looked at his face and was able to see him for at least 3 or 4 seconds, perhaps longer because, she said, "it takes a long time” for the elevator to come down. When the elevator arrived, Soto and the man got on. Soto was a few inches away from him as they rode together to the second floor, where Soto got off. The man’s face was visible and the lighting was bright.
When Soto got out of the elevator, the man remained inside. After Soto unlocked 2 of the 3 locks on her apartment door, *492 she realized that the man she had just let into the building had come down the staircase and was walking toward her. Soto testified that she saw the man’s face, in bright lighting,[1] from 5 or 6 feet away.
Soto tried to get into her apartment quickly and close the door. However, before she could close it the man pushed the door open and knocked her to the floor. Soto immediately got up, began to scream, and tried pushing the door closed to keep the man out of her apartment. The man put his arm around Soto’s neck and covered her mouth with his hand. Soto kept screaming, however, and the man ran out as Soto heard some people approach her apartment.
At the hearing, Soto, an elderly woman who wears glasses,[2] was able to provide a detailed description of the man. She said he was black, about 25 to 30 years old, six feet tall, and had a mustache. He was "not too fat, not too heavy, and not too thin.” He wore nothing on his head, had on a white sweatshirt and a black leather jacket. His pants were very dark.
Because of the conflict in the testimony of Horan and Soto concerning the out-of-court identifications, the court issued an order on November 26, 1990, directing that the Wade hearing be reopened and that further evidence be presented concerning the street identification.[3] At the next proceeding, the court indicated that, if the street identification did take place, it would have to decide whether to preclude some or all of Soto’s identification testimony for failure to give CPL 710.30 notice of the street identification.
On November 30, 1990, the date set for new testimony, the prosecutor indicated that he would not call any additional witnesses. Rather, he stated that he had spoken to a police officer in the 47th Precinct and had confirmed that a street showup was indeed conducted at 209th Street.
*493 DISCUSSION AND CONCLUSIONS
1. The Street Identification
When a witness identifies the defendant out of court and the People intend to have that witness identify the defendant at trial, CPL 710.30 requires the People to notify the defendant of their intention within 15 days after arraignment. (CPL 710.30 [1], [2]; People v McMullin, 70 NY2d 855, 856 [1987]; see, People v O’Doherty, 70 NY2d 479 [1987].) If the People fail to serve timely notice and do not demonstrate good cause for their failure, the identification testimony is not admissible at trial. (CPL 710.30 [3]; People v McMullin, 70 NY2d, at 856-857; People v Broome, 151 AD2d 995 [4th Dept 1989]; see also, People v McKeever, 104 AD2d 608 [2d Dept 1984]; People v Williams, 77 AD2d 579 [2d Dept 1980]; People v Hand, 74 AD2d 909 [2d Dept 1980]; People v Slater, 53 AD2d 41 [4th Dept 1976].)
In this case, the People served notice of their intent to have Soto identify defendant at trial and indicated that she had previously identified him to Officer Horan. During the course of the hearing concerning this prior out-of-court identification, it became evident that Soto identified defendant to another police officer besides Horan during an on-the-street showup at 209th Street. The prosecutor conceded during argument on the motion that the street showup was subject to the CPL 710.30 notice requirement, that he did not provide the required notice, and that therefore the street showup could not be introduced at trial. The street showup is precluded.[4]
2. The Precinct Identification
Although conceding that the street showup must be precluded, the prosecutor urges that the properly noticed precinct identification is admissible. Relying on Soto’s testimony that she made an identification of the defendant at 209th Street, before she arrived at the precinct, the prosecutor contends that this court should not "close its eyes” to the earlier street showup, which made the precinct showup admissible as a "confirmatory” second identification that did not *494 increase the danger of irreparable misidentification.[5]
[6]
This position would allow an identification precluded as evidence at trial to be used to legitimize some other identification procedure. This court does not accept such a limited view of the preclusion sanction. It conflicts with a basic principle of statutory construction that the court should consider the mischief sought to be remedied and should favor the construction that will "suppress the evil and advance the remedy” (Matter of Metropolitan Life Ins. Co. v State Tax Commn., 55 NY2d 758 [1981], affg on opn 80 AD2d 675, 677 [3d Dept 1981]; McKinney’s Cons Laws of NY, Book 1, Statutes § 95).
New York law has long been concerned that the risk of misidentification be minimized and has devised rules to ensure that the jury’s determination of guilt not be affected by unreliable identification evidence. (People v Adams, 53 NY2d 241, 250-251 [1981]; People v Blake, 35 NY2d 331 [1974]; People v Logan, 25 NY2d 184 [1969], cert denied 396 US 1020 [1970]; People v Trowbridge, 305 NY 471 [1953].) After the Supreme Court established the minimum standards for the admissibility of identification testimony in United States v Wade (388 US 218 [1967]), Gilbert v California (388 US 263 [1967]), and Stovall v Denno (388 US 293 [1967]), the Legislature passed CPL 710.30 (1) (b), which required the People to provide notice of their intention to have a witness make an identification if the witness has previously identified the defendant. (People v Gissendanner, 48 NY2d 543, 552 [1979].) When the People provide notice, they alert the defendant so that he may test the reliability of the identification at a hearing before trial. (People v White, 73 NY2d 468, 474 [1989]; People v Collins, 60 NY2d 214, 219 [1983].)
The prosecutor’s argument overlooks the legislative purpose for the notice: that the notice is the means for protecting the defendant’s rights, and that the remedy of preclusion is designed to foster compliance with the notice requirement. (See, People v O’Doherty, 70 NY2d 479, 489 supra; People v Briggs, 38 NY2d 319, 323-324 [1975].) If the prosecutor were able to use the unnoticed identification to save his noticed one, the prosecutor would not be encouraged to provide full notice to *495 the defendant and the purpose of the statute would be undermined. To ensure compliance, the sanction of preclusion must be broad enough to deny the People any benefit of the identification of which it wrongfully did not provide notice. (See, Nardone v United States, 308 US 338, 340-341 [1939] [to forbid direct use of methods inconsistent with applicable law but to permit full indirect use would only invite the very methods deemed inconsistent with the law]; Silverthorne Lbr. Co. v United States, 251 US 385, 392 [1920] [the essence of a provision forbidding the acquisition of evidence in a certain way is not merely that the evidence shall not be used in court but that it shall not be used at all]; People v Rodriguez, 11 NY2d 279, 286 [1962] [exclusionary rule announced by Mapp v Ohio, 367 US 643 (1961), proscribes the use not only of the items illegally seized but also of evidence that stems from their use].) Accordingly, if the People are to be able to use the precinct identification, it must be because that showup is independently admissible.
Considering the precinct showup independently of the street showup, this court concludes the precinct showup should be suppressed. Under the New York State Constitution, evidence of a witness’s out-of-court identification may not be admitted if the identification was the result of an unnecessarily suggestive, police-arranged procedure. (People v Adams, supra, 53 NY2d, at 251.) The practice of showing a lone suspect to a crime victim instead of arranging a lineup has been widely condemned. (E.g., Stovall v Denno, supra, 388 US, at 302; People v Gordon, 76 NY2d 595, 599, supra; People v Ballott, 20 NY2d 600, 606 [1967].) Most recently, in People v Riley (70 NY2d 523, 531 [1987], supra), the Court of Appeals held that a precinct showup is so suggestive that it "should have almost no place in acceptable identification procedures”. The court went on to hold that such showups are infected by "[unreliability of the most extreme kind” and are thus per se inadmissible absent an exigency to justify them (supra, at 529, 531). (Accord, People v Gordon, 76 NY2d, at 599; People v Lafftnan, 161 AD2d 111, 112 [1st Dept 1990]; People v Lorick, 142 AD2d 501, 501-502 [1st Dept], appeal withdrawn 73 NY2d 785 [1988].)
In this case, both of the People’s witnesses indicated that there was a precinct showup, although they did not agree if the procedure occurred inside or outside the precinct. This court holds that it falls squarely within the Riley prohibition. The defendant was deliberately displayed, in handcuffs sur *496 rounded by uniformed police officers, to the complainant as she stood either by the steps of the precinct or inside. No effort was made to minimize suggestiveness. Although Horan testified that the sergeant on the arrest scene ordered that the defendant be removed for his own safety, the People did not establish that there was an exigency that justified the precinct showup. Although "the fact that a hostile crowd was gathering at the scene of the crime may have justified the transportation of the defendant to the precinct, this circumstance does not explain why, once the defendant was at the precinct, it would have been unduly burdensome to conduct a * * * reliable * * * identification.” (People v Guillermo, 137 AD2d 832, 833 [2d Dept 1988].)
3. The In-Court Identification
Although it would be possible, on the basis of Soto’s testimony, to establish an independent source and thus permit her to make an in-court identification, CPL 710.30 (3) and the applicable case law preclude any in-court identification by Soto. Because there was a violation of the notice requirement, both the unnoticed out-of-court and in-court identification must be precluded regardless of the existence of an independent basis for the identification. (People v Bernier, 141 AD2d 750, 754 [2d Dept 1988], affd 73 NY2d 1006 [1989].)
Preclusion is required because one of the identification procedures was not the subject of notice even though the other one was properly noticed. As indicated, CPL 710.30 was enacted to establish procedures for the suppression of constitutionally infirm identification testimony. Under the statute, the People provide notice of their intent to elicit identification testimony at trial so that the defendant may challenge this testimony at a pretrial hearing. The purpose of this Wade hearing is to determine if a police-arranged pretrial identification procedure was unduly suggestive. (People v Chipp, 75 NY2d 327, 337 [1990].) Although the People have the threshold burden of going forward to establish reasonableness of the police conduct and the lack of undue suggestiveness, it is the defendant who has the ultimate burden of proving the procedure was unduly suggestive (supra, at 335). Unless the defendant meets this ultimate burden, there is no obligation on the People to establish an independent source for the witness’s in-court identification and to show that testimony to be sufficiently reliable to be admitted despite any unduly suggestive pretrial procedure (supra).
*497 It is the allocation of these burdens that defines the notice requirement. The defense knowledge of the events necessarily comes from the People. The defense may not even know that an identification procedure has occurred and it is likely to be unaware of what a police officer said to the person making the identification and the circumstances in which the identification occurred. (See, People v Utley, 77 Misc 2d 86, 94-95 [Nassau County Ct 1974]; see also, Preiser, 1986 Supp Practice Commentaries, McKinney’s Cons Laws of NY [1990 Pocket Part], Book 11 A, CPL 710.60, at 92.) The burden of going forward must include informing the defense of all the identification procedures that have taken place because the defendant cannot be expected to establish that a witness’s identification is inadmissible "owing to an improperly made previous identification” (CPL 710.20 [6]), unless the notice specifies each identification procedure.[6] Only when the defendant knows of each previous identification does he have a full and fair opportunity to meet his ultimate burden. (See, Speiser v Randall, 357 US 513, 524 [1958].)
In this case, defendant was not notified of each previous identification that could have influenced Soto’s identification testimony. He had no indication that a street identification had been made until the court ordered an independent source hearing. The existence of this previous identification was disclosed to defendant only by chance and as a result of the prosecutor’s effort to justify a clearly invalid precinct showup.
The sanction for defeating the purpose of the notice requirement is preclusion of the in-court identification, unless the People provided "good cause” for their failure to notify defendant of the street showup. (CPL 710.30 [3]; People v McMullin, 70 NY2d 855, supra; People v O’Doherty, 70 NY2d 479, supra.) The People offered no good cause for their deficient notice. The in-court identification is precluded.
4. Testimony of Inf erred Identification
The prosecutor’s alternative position, in the event that the in-court identification were precluded, was that he should be able to have a police officer testify that he saw both defendant and the complainant at 209th Street and later at the precinct as long as the officer did not specifically refer to *498 an identification by the complainant. This testimony will not be admissible at trial.
Identification evidence comes in a variety of forms and can be conveyed to a jury in a variety of different ways. A witness may make an express identification at trial by stating that the defendant is the perpetrator of the crime. She may also testify with respect to an out-of-court identification she made at a lineup or showup, even when she is unable to identify defendant at trial. (See, e.g., CPL 60.25.) Similarly, a witness may convey an identification by expressing that he or a third party made the identification. (See, e.g., People v Trowbridge, 305 NY 471 [1953], supra.) Other times, a witness may communicate the identification inferentially such as when a police officer states that after talking to the eyewitness, he arrested the defendant. (See, e.g., People v Wright, 21 NY2d 1011 [1968]; People v Brown, 129 AD2d 450, 455 [1st Dept 1987].) When identification testimony is precluded because of inadequate notice, none of these forms should be used by the prosecution. Here, the prosecutor’s request to permit a police officer to testify about his observations of the defendant and complainant after the arrest is plainly an invitation to have the jury conclude, inferentially, that an identification took place. Such testimony circumvents the whole purpose of preclusion.
The prosecutor also requested permission to elicit from Soto a description of the perpetrator of the crime. This description is admissible because it was not tainted by any pretrial identification procedure and because it is not subject to either suppression or preclusion under CPL 710.20 or 710.30. (People v Sanders, 66 NY2d 906, 908 [1985]; People v Myrick, 66 NY2d 903, 904 [1985]; People v Irick, 145 AD2d 507 [2d Dept 1988], lv denied 73 NY2d 978 [1989].)

. Soto said the lighting was as bright as that in the courtroom, which is very bright.

. Soto was wearing her glasses during the incident.

. Before ordering that the hearing be reopened, this court filed, on November 23, 1990, an opinion that concluded that the People had failed to prove that the street identification actually occurred, thereby preventing a finding that the precinct identification was confirmatory. The opinion concluded that the precinct showup should be suppressed as suggestive. This opinion was withdrawn by the November 26,1990 order.

. Counsel’s request that the hearing be reopened to learn the circumstances of the street identification, and its consequences for the precinct identification is not a waiver under CPL 710.30 (3). Defense counsel was responding to the court-initiated discussion of whether the precinct showup was admissible.

. The cases supporting the prosecutor’s position on confirmatory identifications include People v Reyes, 165 AD2d 712, 713-714 (1st Dept 1990); People v Cox, 164 AD2d 779, 780 (1st Dept 1990); People v Nixon, 162 AD2d 225 (1st Dept 1990), lv denied 76 NY2d 862 (1990); People v Sweeper, 165 AD2d 691 (1st Dept 1990); see also, People v Knight, 156 AD2d 588, 589 (2d Dept 1989), lv denied 75 NY2d 920 (1990).

. This requirement is placed upon the People as is evident from CPL 710.60 (3) (b), which does not require the defendant to make a factual showing when asserting that an identification was tainted by an improper procedure.