■ In the Matter of GREGORY J., a Person Alleged to be a Juvenile Delinquent, Appellant. [611 NYS2d 515] —Order of disposition, Family Court, Bronx County (Harvey M. Sklaver, J.), entered March 30, 1993, which adjudicated the appellant a juvenile delinquent upon a finding, after a fact-finding hearing, that he committed acts which, if committed by an adult, would have constituted the crimes of robbery in the second degree, grand larceny in the fourth degree and criminal possession of stolen property in the fifth degree, and placed him under the supervision of the Department of Probation for a period of two years, unanimously reversed, on the law, the facts and as a matter of discretion in the interest of justice, the fact-finding order is vacated and the petition is dismissed, without costs.

The complainant, a fifteen year old high school student, was leaving the school cafeteria when two boys approached him. One, purportedly the appellant, snatched a chain from around his neck and hit him after the other boy placed him in a choke hold.

At a hearing held to determine the appellant's motion to suppress identification evidence, the complainant could only describe the individual who took his chain since the accomplice stood behind the complainant during the incident. The complainant stated that he had seen his assailant almost every day in the cafeteria and on his way home from school, but did not know his name. He described him as being 6 feet

tall, 150 pounds and as having short, nappy hair, big lips and a complexion a little lighter than his own. He was also wearing a black army jacket. The complainant reported the incident, which took place within a minute, to school officials and later filed a complaint with the police department. A few days later, after a friend who had witnessed the incident told him the appellant's name, the complainant informed the authorities. The appellant was brought to the Dean's office where the complainant identified him as the person who had stolen his chain. When viewed by the complainant, the appellant was seated next to a detective, along with three other individuals. The Family Court denied the appellant's motion to suppress.

At a fact-finding hearing, however, the complainant described the person who took his chain as being 5 feet, 10 inches tall, wearing a short hair style known as a "Caesar", which was "sort of in a wave", and as having a complexion a little darker than his own. He further testified that he had only seen this boy once before the incident. When confronted with his earlier testimony, the complainant denied having seen his assailants many times before that day. In later testimony, however, he testified that he had seen them both before "a lot of times". Shortly thereafter, he wavered again, and denied having testified that he had not seen both boys many times before in school. The complainant added that after he was hit by his assailant, his glasses fell off.

Three police reports and a written statement made by the complainant were offered into evidence by the appellant. In a form filled out in the Dean's office on the day of the incident, the complainant stated that one of those who robbed him had short dreadlocks and the other had a nappy afro hairstyle. In the police department complaint report, the complainant stated that the person who took his chain went to the same school as he, was 6 feet, 0 inches tall, 150 pounds and wore his hair in short dreadlocks. He also stated that the assailant wore an army jacket. In a complaint follow-up report completed the day after the incident, a detective reported that the complainant told him that the person who grabbed his chain was in his biology class.

At the conclusion of the fact-finding hearing, the court found that the charges against the appellant were established. He was thereafter adjudicated a juvenile delinquent and was placed under the supervision of the Department of Probation for a period of two years.

Viewing the evidence in a light most favorable to the

presentment agency and giving it the benefit of every reasonable inference *(Matter of Mikal M.,* 191 AD2d 381, 382), we find that the inconsistencies in the complainant's testimony and the absence of any other proof of the appellant's guilt, render the evidence insufficient as a matter of law to prove his identity as the perpetrator of the crime. While great deference is ordinarily accorded to the determination of the trier of facts due to its opportunity to view the witnesses, hear the testimony and observe demeanor, this deference "must give way when the appellate court determines that the fact findings under review are against the weight of the evidence" *(People v Lopez,* 95 AD2d 241, 252). Where a different finding than that reached by the fact-finder would not be unreasonable, the appellate court must weigh the relative probative force of conflicting testimony and the relative strength of any inferences that may be drawn from such testimony in the exercise of its unique factual review power *(People v Bleakley,* 69 NY2d 490, 495; *People v Lopez, supra,* at 253; CPL 470.15 [5]).

The inconsistencies in the complainant's testimony were substantial and material to the issue of the appellant's guilt *(see, Matter of Karl W.,* 189 AD2d 820; *People v Roberts,* 165 AD2d 598; *cf., Matter of Jason B.,* 186 AD2d 481; *Matter of Michael N.,* 181 AD2d 531). His contradictory testimony as to his assailant's hair style, complexion and as to the basis for any prior familiarity with him calls into question the reliability of such testimony.

"Repugnant statements or contraries cannot be true and the fact that the witness has made them tends to show that he is untrustworthy through carelessness, an uncertain memory or dishonesty" *(Larkin v Nassau Elec. R. R. Co.,* 205 NY 267, 269). Moreover, the incident, during which the complainant's glasses fell off, took only a minute to occur, providing only a limited opportunity for the complainant to view the person who robbed him.

We also note that the identification procedure employed by the police cast further doubt on the reliability of the complainant's identification. Displaying the appellant seated next to a detective at the Dean's office was similar to a station house identification which constitutes "[u]nreliability of the most extreme kind" *(People v Riley,* 70 NY2d 523, 529). Although three other individuals were seated with the appellant, the record is silent as to whether or not they resembled him in appearance.

Because the complainant's testimony was unreliable, and,

since this testimony was the only evidence offered in support of the presentment agency's case, the determination of the Family Court was contrary to the weight of the evidence *(see,* CPL 470.15 [5]; *Matter of Karl W., supra; People v Harry,* 181 AD2d 694; *People v Roberts, supra).* Concur—Carro, J. P., Rosenberger, Ross, Asch and Tom, JJ.