Bellacosa, J.
(dissenting). We vote to affirm the order upholding defendant’s robbery conviction after a jury trial. Settled precedents and the particular facts, resolved against defendant in both courts below, establish that no Wade hearing should be mandated in this case and all similarly situate street canvass cases (see, United States v Wade, 388 US 218). "[N]o legal basis [or cognizable theory] for suppression is presented” and no sufficient "factual predicate for the motion” to suppress, as a matter of law, is advanced (CPL 710.60; see, People v Rodriguez, 79 NY2d 445, 452; see also, People v Mendoza, 82 NY2d 415, 421). Thus, summary denial is authorized and warranted.
Judge Levine and I respectfully disagree with the majority opinion because it erects a virtual per se pretrial hearing entitlement, contrary to CPL 710.60’s express limitations and prescriptions. It does so, moreover, in an entirely new and inappropriate category of law enforcement investigation of criminal conduct and immediate pursuit of perpetrators. Every noncustodial street canvass by police with crime victims will hereafter be presumptively treated as "police-arranged” and identification-suggestive by its nature. Unnecessary, layered hearings, not constitutionally or statutorily required in fairness, merely provide for indirect discovery, complexity and tactical delay and unjust results.
The victim, Harold Knowings, was walking home in Brooklyn at approximately 11:00 p.m. in 1990 when he was approached by defendant, who offered him marihuana. Knowings identified the area as "well lit”. Although Knowings tried to rebuff defendant’s attempt to sell the drugs, defendant walked along with Knowings for another 10 to 20 seconds *226 until the victim entered a grocery store. When Knowings attempted to leave the store, defendant blocked his path. Knowings reentered the store to telephone the police, but was grabbed by an unknown individual behind the counter and taken outside the store, where he was assaulted and robbed by a group of approximately six individuals, including defendant. Knowings eventually struggled free and fled to a transit police station located approximately two blocks away. The police immediately took Knowings in a marked police vehicle and drove him back towards the crime scene.
The entirety of the original file on this issue shows the following:
A. In defendant’s omnibus motion in support of a Wade hearing, defense counsel affirmed only this:
"It is respectfully submitted that the procedures utilized by law enforcement officials to obtain an identification of the defendant were unfair, creating a substantial likelihood of misidentification. This court should therefore order a hearing to determine the propriety of the procedures used. The procedure utilized by police was a one on one situation and the potential for misidentification was extremely great” (defendant’s appendix, at 16-17).
B. The Assistant District Attorney affirmed in response:
"The People oppose both defendant’s request for relief and a hearing on the issue.
"First, although defendant normally need not be very specific in requesting a hearing to determine this issue, defendant’s motion in this case is extremely conclusory and fails entirely to establish a claim.
"Second, the defendant in this case was pointed out to the police by the complainant during a canvass of the area surrounding the scene of the crime. As such, there was no police-arranged procedure surrounding the identification in this case, and defendant is therefore not entitled to a hearing on the issue.
"Accordingly * * * this court should deny both defendant’s request for relief and a hearing on the issue.”
*227 C. Justice Broomer’s pretrial motions’ decision concludes:
"II. The defendants’ motions for a Wade/Dunaway hearing are denied. The People represent that the complaining witness sua sponte pointed out the defendants to the police during a canvass of the area within minutes of the alleged crime. Since these were not police sponsored identifications, they do no warrant a Wade hearing. Even the serving of CPL § 710.30 notice does not generate a hearing where none is warranted (People v Allen, NYU, June 20, 1990, p. 25, col. 5).
* * *
"Although Wade/Dunaway, Mapp and Huntley hearings are denied, they shall be conducted if, at the time of trial, facts appear to be other than stated in the papers (People v Wicker, 72 AD2d 611).”
The Appellate Division, Second Department, affirmed holding that defendant was not entitled to a hearing "because the complainant’s identification of the defendant was made spontaneously and was not the product of an identification procedure arranged by the police” (201 AD2d 581, 582).
The street identification at issue by the mugging victim represents a typical, standard and reasonable police-victim prompt effort to act upon the report of a crime and to search for and apprehend a perpetrator (see, e.g., People v Duuvon, 77 NY2d 541; People v Love, 57 NY2d 1023). It was not, as stated by the majority, "conducted for the purpose of obtaining an identification.” (Majority opn, at 220.) No one could have known that one of the perpetrators was still at or near the crime scene when the normal investigative canvass was undertaken.
Some such situations could warrant a hearing because they are truly "police-arranged” or might qualify as a suggestive showup if they satisfy the prerequisites of CPL 710.60. That, however, is not this case. This record does not support such a conclusion, and all such encounters are not inherently suspect, qualifying for an automatic pretrial Wade hearing.
The action taken here is, on its face, not a "police-arranged” identification procedure. The law enforcement authorities did not initiate or exert this effort with prior knowledge about this or any targeted perpetrator. They were simply responding *228 immediately to a civilian crime victim’s complaint. This is not a situation instinct with suggestibility, such as suggestive or improper bolstering present in showups, lineups and photo identifications. Nor does defendant’s motion for the Wade hearing assert anything like that — in essence, his entire claim is reduced to a nonfactual, conclusory "likelihood of misidentification, ” a very different order of problem from police misconduct of suggestibility. Moreover, this is not the kind of forbidden one-on-one arrangement that we have condemned. Categories and nomenclature should not control these cases. We have to define our terms, especially such important terms of art like these, and then carefully analyze and apply them, case by case, not by per se ukases. In sum, the "police-or-ranged” and "one-on-one” phrases of art and concepts have been developed in our cases for entirely different purposes, serving different underlying policies from that which occurred here and that which the majority transforms into suspect or suppressed investigatory practices.
"Police-arranged” and "one-on-one” identifications, in the identification semantics sense, are not, in our view, contemplated to be so embracive as to cover all street canvasses and engender such automatic legal consequences (People v Rodriguez, 79 NY2d 445, 449, supra; People v Duuvon, 77 NY2d 541, 546, supra; People v Newball, 76 NY2d 587, 590; People v Chipp, 75 NY2d 327, 337, cert denied 498 US 833). It is not logical, nor is it rooted in sound practicality or tested constitutional theory (see, e.g., Stovall v Denno, 388 US 293). As this Court has stated, the identification statutes were " 'a legislative response to the problem of suggestive and misleading pretrial identification procedures’ ” (People v White, 73 NY2d 468, 474, quoting People v Gissendanner, 48 NY2d 543, 552 [emphasis added]). Our judicial purview, thus, has always spotlighted police conduct to expose the danger or potentiality for suggestiveness lurking in the particular kind and mode of law enforcement practices (see, People v Riley, 70 NY2d 523, 529-531). Historically, the precedents have dealt with lineups (People v Chipp, 75 NY2d 327, supra; United States v Wade, 388 US 218, supra), true showups (People v Riley, 70 NY2d 523, supra) and photo identifications (People v Rodriguez, 79 NY2d 445, supra; Simmons v United States, 390 US 377). By contrast, the law enforcement action here was limited to responding promptly and appropriately to a crime victim’s exigent report of a crime committed proximately in time and place. The action is different in kind from the identification *229 techniques, practices and categories that have previously been curtailed or condemned or made subject to per se suppression.
Defendant did not give the trial court in his moving papers actual or even theoretical suggestiveness as a basis for a hearing. Rather, he advanced only a speculative likelihood of misidentification. That is not a cognizable legal or factual predicate sufficient to bar a trial court from exercising its statutorily granted authority to summarily deny a suppression motion under CPL 710.60. The defendant’s claim, accepted by the majority, allows defendant to engage in a fishing expedition pretrial hearing in every case merely for the conclusory asking of it (see, People v Mendoza, 82 NY2d 415, 422, 425, supra). That the police provided the transportation, should not, standing alone, create an issue on this record entitling defendant to a pretrial hearing on suggestiveness on some new, presumptively inherently suspicious theory (see, People v Brnja, 50 NY2d 366). This case drives the phrase "police-arranged” inexorably and inappropriately beyond its categorical, functional and particularized purpose.
The present case is also factually and legally distinguishable from People v Newball (76 NY2d 587, supra). In Newball, the defendant objected to the testimony of an undercover officer claiming that the officer had made a previous identification of defendant and the People did not serve a CPL 710.30 notice. The Court held that the identification was the result of a "police-arranged” identification procedure because another officer previously provided the undercover officer with a detailed description of defendant and specifically pointed to the defendant’s location. The Court specifically distinguished New-ball’s identification procedure from other "spontaneous * * * encounters” and analogized the police procedure to a "street showup[ ] made at the behest of the police” (id., at 591).
Not without significance, and unlike Newball, the victim in the present case directed the police back to the nearby location of the crime scene. The police had not been given a description of the defendant, and the victim’s identification was a spontaneous, noncustodial street spotting. These factors diminish to legal insignificance, unless something more is shown in defendant’s moving papers seeking a hearing, the risks of police suggestiveness, at least as a threshold matter qualifying for an automatic pretrial hearing.
People v Rodriguez (79 NY2d 445, supra) also does not serve as precedential support for the majority’s analysis, rule and *230 result. In Rodriguez, the witness identified defendant from a single photo display (id., at 447), a police identification method long recognized by us and the United States Supreme Court as an inherently suggestive tool (see, Simmons v United States, 390 US 377, 384, supra; see generally, Gilbert v California, 388 US 283; United States v Wade, 388 US 218, supra; Stovall v Denno, 388 US 293, supra). We concluded that defendant was entitled to a Wade hearing and rejected the People’s argument that the witness was "very familiar” with defendant and thus fell within the narrow exception carried out in People v Gissendanner (48 NY2d 543, 552, supra).
The instant case is critically different from the majority’s cited cases and more closely parallels People v Wharton (74 NY2d 921), a case where the Court held that the trial court did not err by denying defendant’s motion for a Wade pretrial hearing. In Wharton, the trial court permitted into evidence identification testimony of a trained undercover officer who had observed the defendant during a face-to-face narcotics sale, knowing that the defendant would shortly be arrested, and who viewed the defendant on the street while he was being arrested, previous to the showup. We concluded that the identification made by the officer was not the kind of identification "ordinarily burdened or compromised by forbidden suggestiveness” necessitating a Wade hearing (id., at 922). By parity of reasoning, the victim’s identification in this case occurred at a place and time sufficiently connected and contemporaneous to the arrest itself so as to reduce the possibility that an innocent individual was being detained by reason of a mistaken arrest, such that a pretrial Wade hearing should not automatically be afforded (id., at 922-923). This analysis illustrates how divergent the majority’s analysis is as to the pretrial hearing rules as applied to this case and as to all the cases that will be forced into its wake. The precedential sweep of the rubric that flows from this case is unwarranted and most unfortunate.
In sum, the Court enacts yet another per se rule which will provide the defendant with a hearing " 'merely for the asking’ ” (contrast, People v Mendoza, 82 NY2d 415, 425, supra, quoting People v Gruden, 42 NY2d 214, 217). The majority has failed to consider the competing policies which undergird CPL article 710 and, by presuming suggestiveness, creates a remedy disproportionate to the evil sought to be prevented. The fundamentally flawed premise of the majority’s syllogism is a threshold presumption of official suggestive *231 ness. The rule by statutory prescription in CPL 710.60 still requires some individualized legal theory or fact base, or at least circumstances allowing reasonable inferences of actual or potential suggestive conduct. This case displaces that legislative authorization for judicial officers to summarily deny unsubstantiated suppression motions and substitutes instead conclusory speculation — as occurred here — as a per se basis for a pretrial hearing in every such street canvass identification case (see, CPL art 710).
We respectfully dissent and vote to uphold the conviction.
Chief Judge Kaye and Judges Simons, Smith and Ciparick concur with Judge Titone; Judge Bellacosa dissents in a separate opinion in which Judge Levine concurs.
Order modified by remitting to Supreme Court, Kings County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.