OPINION OF THE COURT
Bellacosa, J.
 This appeal from an Appellate Division order, affirming a conviction of criminal sale and possession of drugs, turns on the admissibility of a station house showup identification by an undercover police officer. The Court is unanimous that the undercover officer’s December 7, 1984 showup identification of defendant as a participant in a drug sale on November 27, 1984 is irredeemably suggestive and must be suppressed. It is significantly different from the confirmatory type of showup identification by a trained undercover police officer which was circumscribed but allowed in People v Wharton (74 NY2d 921). We therefore reverse, vacate the judgment of conviction, and remit for further proceedings on the indictments. In that connection, if the prosecution intends to provide in-court identification of defendant by the officer at a new trial, the identification must be scrutinized at a Wade hearing to be sure it is free of taint and dependent on an independent source (United States v Wade, 388 US 218; see also, People v Adams, 53 NY2d 241, 251). Finally, the evidence of defendant’s guilt of narcotics possessory crimes on December 7, 1984 is sufficient under our standard review test, giving the People, as we must, every favorable interpretation since they *598 persuaded a jury as a matter of fact, beyond a reasonable doubt, that defendant exercised a knowing dominion and control over the drugs.
On November 27, 1984, an undercover police officer, in the course of a drug buy operation, encountered defendant in a Bronx alleyway. Defendant asked if she wanted "coke” and directed her to knock on the door of a nearby house if she did. The undercover officer knocked, was admitted to an apartment, and told the occupants that she wanted to buy some cocaine. Before the buy was completed, defendant also knocked on the door, was admitted, and warned the occupants that the police were outside. The officer completed the buy and defendant told her that she would like the "good stuff’. She left the house and radioed her backup team that the buy was complete, but gave no descriptions of any of the participants. No arrests were made at that time.
The police subsequently secured a "no-knock” search warrant for the apartment. The same undercover officer returned to the apartment at approximately 5:25 p.m. on December 7, 1984 to attempt another buy. This time she encountered two men, neither of whom were present in the apartment during the earlier transaction. She made the buy, left the area, and radioed descriptions of the two men and the circumstances of the buy to her backup unit. She did not see defendant in or near the apartment on December 7. Other officers, armed with the warrant and the radioed confirmation, then entered the apartment. A detective observed defendant and two other individuals, a man and a woman, standing on a staircase in an alcove in the apartment. Defendant and the man, who was clutching a black bag, were about one foot apart. Defendant pointed a gun at the detective but dropped it at the detective’s command. The defendant and four other occupants of the apartment were arrested. The black bag contained cocaine. A search of the apartment disclosed more drugs and drug paraphernalia in an enclosed area under the stairs where defendant had been standing.
At 11:00 p.m. that evening at the station house, through a one-way mirror, the undercover officer viewed defendant for the first time since November 27; she also viewed the two men who had participated in the December 7 buy. All three men were handcuffed together. She identified the two men from the December 7 buy and then identified defendant as one of the persons she saw at the apartment in the course of the Novem *599 ber 27 buy. There is no indication in the record, other than sparse, inconclusive references presented at trial, of any conversations before, during, or after the showup among the officers, especially with respect to the undercover officer’s identification of defendant.
Defendant’s pretrial motion for a Wade hearing was denied. At trial, the undercover officer was permitted to testify concerning her station house showup identification of the defendant as a participant in the November 27 transaction. She also identified him in court. The jury convicted him of sale of a controlled substance in the third degree in connection with the November 27 buy, and third and fourth degree possession of a controlled substance and possession of marihuana in the second degree in connection with the December 7 buy. The Appellate Division affirmed, without opinion.
The root of our analysis takes us back to United States v Wade (388 US 218, supra), where the Supreme Court, recognizing that "risks of suggestion attend” pretrial lineups and showups and "increase the dangers inhering in eyewitness identification” (id., at 229), held essentially that identification evidence may be inadmissible unless scrutinized for freedom from suggestiveness.
In People v Adams (53 NY2d 241, supra) and People v Riley and People v Rodriguez (70 NY2d 523), involving civilian showup identifications at a police precinct, we added that evidence of such inherently suggestive pretrial showup identifications had to be suppressed except in exigent circumstances.
The prior showup identification of defendant in this case by the undercover officer suffers from all the forbidden attributes of suggestiveness that led to suppression in the sampling of pertinent cases just noted. The defendant here was never seen by the officer during the December 7 buy. When she viewed him on December 7, he was handcuffed to the two men from whom she had just made a criminal purchase several hours earlier. The three alleged perpetrators were being held at the station house alone in a room into which the officer peered to make the identifications. We know nothing definitive of the police conversations with the officer which preceded or attended the showup. Not without significance, too, is the 10-day lapse between the November 27 buy and the December 7 showup — a factor not present in Adams, Riley or Rodriguez. The factors here heighten the real danger of calculated or careless misidentification.
*600 Our analysis must also include consideration of cases acknowledging the significance of the expertise of police officers as trained identifying agents. Unlike People v Gissendanner (48 NY2d 543), where the suggestiveness concern was deemed neutralized because the police officer who identified the defendant had two contacts with the defendant before the commission of the crime, the identifying witness and the suspect here were not previously known to each other — the undercover officer had never seen defendant prior to the November 27 buy and did not see him again until the December 7 showup.
Likewise, the fact that the identifying witness in this case is a trained undercover police officer who made the prior drug purchase with defendant’s participation cannot, by itself, overcome the extreme features of suggestiveness present in this case. Thus, the subsequent showup does not qualify for exceptional treatment under People v Morales (37 NY2d 262) or People v Wharton (74 NY2d 921, supra). In Morales, we held not unduly suggestive a follow-up station house showup identification of a suspect by a trained and experienced undercover narcotics officer six hours after a buy-and-bust of the suspect. In that case, the officer had identified the suspect on the street immediately after the buy. We concluded that under those circumstances, the station house viewing was a confirmation that the right person had been arrested and was "actually 'consistent with good police work’ ” (37 NY2d, supra, at 272).
In Wharton, we added that the defendant’s request for a Wade hearing was not improperly denied where the showup identification occurred three hours after the defendant’s arrest for a buy-and-bust transaction. The trial court ultimately allowed into evidence the identification testimony of a trained, experienced undercover officer who had observed the defendant during the buy, knowing that the defendant would shortly be arrested, and who had viewed the defendant on the street while he was being arrested, previous to the showup. We concluded that the showup occurred at a "place and time sufficiently connected and contemporaneous to the arrest itself as to constitute the ordinary and proper completion of an integral police procedure.” (74 NY2d, supra, at 922-923.)
The instant case is critically different. The November 27 police operation in this case was not a "buy and bust”. The police chose not to arrest the participants in that buy and the undercover officer radioed no description of defendant to her backup team. The 10-day lapse between the first buy and the *601 second transaction, followed by a highly suggestive combined custodial showup, was not an integral police procedure and puts this case into its own distinctively suspect orbit. The differences from Wharton and Morales are in kind, not just in temporal degree. Actually, the only likeness to those cases is that the station house identification was made by the undercover officer who made the original drug buy, and that surely cannot justify dispensing with necessary protections affecting identification procedures. Moreover, we carefully refrained in Wharton from engrafting a general "trained officer exception” to the necessary and readily applied sanctions against potentially erroneous or tainted identifications.
Comprehensive analysis, not superficial categorization, ultimately governs. Particular vigilance is necessary with respect to these sometimes speedy buy-and-eventual-bust situations, where very often multiple participants and transactions are involved. Misidentifications should be carefully guarded against lest innocent persons be swept into unlawful arrests and convictions. Trained and perhaps well-intentioned police officers may too easily fall prey to the pressures and official routinization of depersonalized identifications, which could also lead to unacceptable injustices. Showup evidence must be eschewed and, at the very least, subjected to Wade hearings in these circumstances to guard against these dangers, even for in-court identifications.
As to defendant’s remaining argument for dismissal of the December 7 criminal possession charges, based on the state of the record evidence before us, we conclude that the defendant’s role in the December 7 criminal drug transaction was sufficiently proved under our standard measure of review (People v Contes, 60 NY2d 620). The dissenting expression, by its terms, engages in a forbidden weight review, not the more limited sufficiency review allowed in our Court. Because the dissenting-in-part opinion takes a different approach to the resolution of this issue, we note that there is a view of the record as now before us for review under which an appellate court could reasonably be satisfied that this is not a "mere presence” case like People v Headley (74 NY2d 858) and People v Pearson (75 NY2d 1001).
Accordingly, the order of the Appellate Division should be reversed and the case remitted to Supreme Court, Bronx County, for further proceedings in accordance with this opinion.