■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VIRGILIO POLANCO, Appellant.

This appeal arises out of an undercover "buy and bust" operation, pursuant to which defendant and three others were

indicted on February 22, 1989. The facts surrounding the actual drug sale to undercover Officer Michael Blake, which are detailed in the dissent, are undisputed. Defendant contends, however, that he was not among the group of men present in Apartment 2F of 596 Riverside Drive in Manhattan when Blake purchased a gram of crack cocaine in exchange for $25 of pre-recorded "buy" money, but was apprehended by members of the backup team as he was leaving after merely delivering food.

In connection with the defense of misidentification, defendant moved to suppress the identification testimony of the undercover officer, and argues on appeal that it was error for the trial court to have summarily denied his motion on the ground that the identification was a "confirmation by an undercover police officer shortly after the incident". Upon examination of this record, we conclude that Blake was accorded an excellent opportunity to view defendant and the other sellers, as evidenced by his ability to provide the backup team with physical and clothing descriptions, and that the hearing court was correct in ruling that the identification was a confirmatory one.

The law is well established that when a trained undercover narcotics officer has a face-to-face drug transaction with a suspect, and then transmits descriptions to a backup team which makes an arrest minutes later, his subsequent viewing of the suspect to confirm that the right person was apprehended is not "of a kind ordinarily burdened or compromised by forbidden suggestiveness, warranting a lineup procedure or *Wade* hearing". *(People v Wharton,* 74 NY2d 921, 922; *People v Roberts,* 169 AD2d 284, 289.)* Defendant argues that this case is distinguishable in that Officer Blake's experience "was more akin to victim" because the sellers discovered his gun and, suspecting that he was a police officer, held him at gunpoint for approximately ten minutes, while they argued about whether to kill him.

The record establishes, however, that Blake was able to maintain such presence of mind during the harrowing experience that he ultimately persuaded the men that he was simply a buyer and, when they were convinced and sold him the drugs, even attempted to retrieve his gun before leaving. Under these circumstances, we decline to find that Blake's ability to confirm the identification of the persons arrested by the backup team was impaired. Blake was an experienced police officer who had undergone special training for undercover narcotics work, which emphasizes the need to observe

and recall, and he undoubtedly drew upon his training when placed in a life-threatening situation.

Nor do we believe that the precinct identification was so removed in time as to render Blake's viewing anything other than confirmatory. Unlike the circumstances in *People v Gordon* (76 NY2d 595), where the undercover's precinct showup identification took place ten days after her observation of the defendant, the identification here occurred five hours after the drug transaction. Moreover, the time it took to complete the sale was prolonged by the sellers' seizure of Blake's weapon and the ensuing discussions, which culminated in his release.

Defendant's argument that Blake's identification was further compromised by suggestiveness is also without merit. Unlike civilian witnesses, a trained and experienced officer has planned his participation in the transaction and is expected to observe carefully for the specific purpose of later identification. As such the identification does not entail the same risks of suggestivity that might be critical in procedures involving civilian witnesses. *(See, People v Wharton, supra,* at 923; *People v Morales,* 37 NY2d 262, 271.)* Indeed, it is noteworthy that Blake specifically stated that defendant was missing when he viewed a group of suspects earlier in the evening, from which he identified two while rejecting six others.

We have reviewed defendant's remaining contentions on appeal, and find them to be without merit. Concur—Sullivan, J. P., Milonas, Kupferman and Kassal, JJ.

Smith, J., dissents in part in a memorandum appended to the majority memorandum in *People v Derosario* (179 AD2d 533, 535 [decided herewith]).