■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NAPOLEON DEROSARIO, Appellant

In this "buy and bust" operation, the undercover officer was given entry to an apartment where the various defendants were engaged in a cocaine-selling operation. The officer noted

the presence of substantial quantities of cocaine, drug paraphernalia and weapons. At some point during the transaction, the officer's gun was removed and pointed at his head. When the officer was permitted to leave, after having purchased "crack" cocaine for $25, and after having been in the defendant's presence for ten minutes, he transmitted an accurate description of the several occupants of the apartment to the backup team, who, without a warrant, entered the apartment, secured the premises, and found contraband and weapons in plain view. The defendant and the other perpetrators matched the descriptions transmitted by the undercover officer. That evening, the undercover officer identified the defendant and the co-defendant Polanco at the police station.

Considering the gravity and violent nature of the offenses, the certain knowledge that the perpetrators in the apartment were armed, the clear showing of probable cause, the likelihood that the defendant and the others would escape at the first indication of a police presence and the likelihood that contraband would be destroyed, the hearing evidence established sufficient exigency to provide a predicate for the warrantless search and seizure. *(Cf., People v Cruz,* 149 AD2d 151, 160.)

In view of the face-to-face confrontation between the undercover officer and the defendant, the immediate transmission of a detailed description, and the confirmatory nature of the precinct house identification, it was not error for the Supreme Court to have summarily denied the defendant's motion for a *Wade* hearing. *(People v Wharton,* 74 NY2d 921; *People v Hendricks,* 159 AD2d 396, *lv denied* 76 NY2d 736.) The station house identification by the officer, who received special training in undercover narcotics operations, though made some four or five hours after his initial observation of the defendant, would not be " 'of a kind ordinarily burdened or compromised by forbidden suggestiveness, warranting a lineup procedure or *Wade* hearing' " *(People v Roberts,* 169 AD2d 284, 289, quoting *People v Wharton, supra,* at 922).

Despite the "harrowing" nature of the incident, there is no indication from the record that the officer's attention was not focused on the suspects in the apartment, as the dissent suggests. Rather, the officer's ability to view the defendant and the other occupants was demonstrated by his subsequent ability to provide the backup team with accurate descriptions. Moreover, as this court noted in the co-defendant Polanco's case, the officer had the presence of mind to persuade the perpetrators that he was simply a buyer and not a police

officer and further, to attempt to retrieve his gun after purchasing the drugs and before leaving the apartment. *(People v Polanco,* 179 AD2d 531 [decided herewith].)

By failing to timely object to the court's oral response to a verbal inquiry from jurors, the defendant waived any appellate challenge. *(People v Buckley,* 75 NY2d 843.) In any event, we note that the exchange was initiated by a jury note, and that the court's response and follow-up questions only clarified certain points *(see, United States v Ulloa,* 882 F2d 41, 45). The court's response to the jury's request was meaningful *(People v Almodovar,* 62 NY2d 126).

Further, we note that the court gave proper sequestration instructions. In conclusion, we find no abuse of discretion in the sentence imposed *(People v Farrar,* 52 NY2d 302). Concur —Carro, J. P., Rosenberger, Ellerin and Rubin, JJ.

Smith, J., dissents in part with respect to this appeal and with respect to *People v Polanco* (179 AD2d 531 [decided herewith]), in a memorandum as follows: Defendants Polanco and Derosario were entitled to a *Wade* identification hearing* and to possible suppression of a showup identification by an undercover police officer. I, therefore, dissent. I would hold the appeal in abeyance and remand for an identification hearing.

On January 26, 1989, around 8:00 P.M., an undercover police officer and his partner went to 596 Riverside Drive, Apartment 2F in Manhattan as part of a "buy and bust" operation. When they arrived, the undercover was permitted inside the apartment but his partner was not. The undercover was searched and a gun found on his person. During the next ten minutes the undercover was held at gunpoint, sometimes with the gun at his head. The undercover's partner testified that while the undercover was being held, some of the several persons in the apartment were arguing in Spanish as to whether the undercover should be killed. Eventually, the undercover convinced the men in the apartment that he was not a police officer but only wanted to buy drugs. The undercover bought "crack" cocaine for $25 and was permitted to leave the apartment. His gun was not returned.

While the undercover was in the apartment, his partner, listening at the door and realizing the undercover was in trouble, had tried to call for immediate assistance. None was forthcoming. After leaving the apartment the undercover radioed what had happened from his car and a number of police officers went to the apartment and arrested the several

* *(United States v Wade,* 388 US 218 [1967].)

occupants. During the struggle inside the apartment, defendants Polanco and Derosario were injured. Both were taken to the hospital. Polanco received several stitches in his head and it was bandaged.

Around 10:30 P.M. that evening at the police station, the undercover identified several men who had been in the apartment. The two defendants here were not among those identified, having been taken to the hospital. Around 1:00 A.M. the same night, the undercover identified the two defendants at the police station. The two defendants were the only persons in the group whom the undercover had not seen at the 10:30 P.M. showup identification. In addition, defendant Polanco was the only person whose head was bandaged.

Subsequently, both defendants were convicted of robbery in the first degree, criminal possession of a controlled substance in the second degree, criminal sale of a controlled substance in the third degree, and criminal possession of a weapon in the second degree.

Both defendants testified at the trial. Both denied any involvement in criminal activity. Defendant Polanco testified that he was not present in the apartment at the time the undercover officer was there. This assertion was supported by the statement of another person arrested in the apartment, Antonio Tias, who pleaded guilty to various counts in the indictment. At his plea allocution, Tias apparently stated that defendant Polanco was not in the apartment when the undercover was held. At the first trial of the defendants here, which ended in a mistrial when the jury could not agree on a verdict, Tias invoked his privilege against self-incrimination before the jury. At the second trial, since it was expected that he would continue to invoke that right, Tias was not called to testify.

Defendant Polanco testified that he had gone to the apartment to carry food at the request of a pregnant woman whom he encountered on the street. Defendant Derosario testified that he was wrongly implicated in the events because he had gone to the apartment to buy drugs.

Showup identifications at police stations by civilian witnesses are unreliable as a matter of law and must be suppressed. *(People v Riley,* 70 NY2d 523 [1987].) On the other hand, a confirmatory identification by a police officer at a precinct is not unreliable as a matter of law and may be admitted into evidence. *(People v Wharton,* 74 NY2d 921 [1989]; *People v Gordon,* 76 NY2d 595 [1990].) Despite the fact

that confirmatory showup identifications by undercover police officers are admissible without a *Wade* hearing, that rule does have qualifications. In *Wharton,* the Court of Appeals stated: "In sum, we imply no categorical rule exempting from requested *Wade* hearings confirmatory identifications by police officers by merely labeling them as such *(see, People v Perez,* 74 NY2d 637). Where the nature and circumstances of the encounter and identification may warrant, a hearing should and undoubtedly will be held." (74 NY2d, *supra,* at 923.)

For two reasons the identifications here were improper.

The first reason is the nature of the undercover's encounter with persons inside the apartment. This was not an ordinary "buy and bust" situation where an undercover buys drugs without incident and shortly thereafter confirms the identification of the seller. Here the undercover experienced a life threatening and harrowing ten minutes during which his attention was centered on his chances for survival. The identification of the defendants took place some four or five hours later at the police station and without any identification prior to that time. In *People v Wharton (supra),* where a station house identification was permitted, the police officer had driven by the scene of a "buy and bust" operation within five minutes after the buy and had identified the defendant. Here there was no such immediate identification.

Second, the station house identification was unnecessarily suggestive. Around 10:30 P.M. the undercover had identified several men in a showup. Around 1:00 A.M. when the two defendants here were shown to the undercover, they were the only persons in the group who were not there at 10:30. In addition, defendant Polanco was the only person wearing a bandage.

Accordingly, a *Wade* hearing is required.