THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES
WARING, Appellant.

Second Department, November 18, 1992

### APPEARANCES OF COUNSEL

*James Waring, pro se,* and *Patricia N. Gillard,* Hauppauge, for James Waring, appellant.

*James M. Catterson, Jr., District Attorney,* Riverhead *(Paul M. Hensley* and *Barbara D. Rose* of counsel), for respondent.

### OPINION OF THE COURT

COPERTINO, J.

The key question to be resolved on this appeal is whether subsequent sales by a defendant to the same undercover officers may form the predicate for an in-court identification where the defendant's identity was suggested by other officers and a viewing of a single police photograph after the first sale.

The defendant was charged in a 10-count indictment for the possession and sale of "crack cocaine" to undercover Suffolk County police officers conducting narcotics operations in the North Amityville area of Suffolk County. At the suppression hearing, four undercover officers testified that each had purchased so-called "crack cocaine" from the defendant at various locations in North Amityville. The sales had occurred on January 22, 1988; April 12, 19, and 28, 1988; and June 15, 1988, respectively. The officers worked in teams of two, and stayed in contact with backup teams by radio.

After the purchase on January 22, 1988, at about 9:32 P.M., one of the officers who had dealt with the defendant radioed a description to his backup team, who met the officer approximately five minutes later. The backup officers informed him

that based on the description, as well as their own observations after the transaction, the seller was known to them as James Waring, the defendant. Six days later, the undercover officer requested and received a 1984 photograph of the defendant from police files, and immediately identified the individual depicted in that photograph as the person from whom he and his partner had purchased the drugs.

On April 12, 1988, at about 2:52 P.M., and on April 19, 1988, at about 6:33 P.M., two other teams also purchased cocaine. Although the particular photograph was different, essentially the same events ensued. The purchasing officers were informed that the defendant James Waring was the seller, and thereafter viewed a photograph of the defendant. In the case of the transaction on April 12, 1988, the purchasing officer viewed a 1987 photograph two days later on April 14. The officer involved in the April 19, 1988, transaction, looked at the 1987 photograph three days later on April 22, 1988.

On April 28, 1988, the same undercover team which had been involved in the January purchase again bought narcotics from the defendant. The purchasing officer immediately recognized the defendant from the previous transaction. A few hours later he again viewed a photograph of the defendant. On June 15, 1988, there was yet another purchase by this same team. The officer who made the purchase, the partner of the April 28, 1988 undercover purchaser, recognized the defendant from both the January 22 and April 28 transactions. About a week after the June 15, 1988, purchase, he, too, looked at a photograph of defendant.

Contrary to the position taken by the People and accepted by the hearing court, the photographic identifications were not merely "confirmatory" in nature. A confirmatory viewing is one which is conducted for the sole purpose of ascertaining that the right individual has been or will be arrested *(see, People v Rodriguez,* 79 NY2d 445, 449; *People v Snow,* 128 AD2d 564; *People v Carolina,* 112 AD2d 244, 245) and can obviate the need for a CPL 710.30 notice or a *Wade* hearing in the first instance *(see, People v Rodriguez, supra; People v Wharton,* 74 NY2d 921, 923; *People v Gissendanner,* 48 NY2d 543, 552). The approval of a suggestive "confirmatory identification" rests on a case-by-case finding, often implicit in nature, that misidentification is nevertheless highly unlikely because there has been a qualitatively sufficient viewing of the defendant by a trained officer shortly before the identification is made. A truly "confirmatory" viewing resulting in an

identification is made principally for the benefit of fellow law enforcement personnel to assure them that they have the perpetrator and not someone else in custody. In the present case, the defendant had not yet been arrested when the photographs were viewed, but certainly no sound reason exists to review the People's "confirmatory identification" contention differently based on this distinction. Identifying a person prior to an arrest based on a given procedure raises the same issues as would be raised in a case where the identification is made after the arrest takes place.

To understand the concern such procedures cause one need look no further than discussions of the more general "confirmatory identification" exception to the notice and hearing requirements of CPL article 710 carved out by the Court of Appeals for civilian witnesses (see, People v Rodriguez, 79 NY2d 445, supra; People v Collins, 60 NY2d 214). This exception rests on the length and quality of prior contacts between witness and defendant, but always requires a relationship which is more than "fleeting or distant" (People v Collins, supra, at 219). Notwithstanding the training and experience which distinguishes the police from the public at large, they have never been considered incapable of making a misidentification, and the concern remains. Consequently, there is no general "trained officer exception" to necessary sanctions against tainted identifications (People v Gordon, 76 NY2d 595, 601). Indeed, "[p]articular vigilance is necessary with respect to these sometimes speedy buy-and-eventual-bust situations, where very often multiple participants and transactions are involved * * * Trained and perhaps well-intentioned police officers may too easily fall prey to the pressures and official routinization of depersonalized identifications, which could also lead to unacceptable injustices" (see, People v Gordon, supra, at 601).

In accord with the foregoing, the photographic viewings in this case cannot be deemed merely "confirmatory" in nature. They were employed to aid the purchasing officers in identifying the seller, and tainted each identification so made. The hearing minutes indicate that none of the officers who dealt with the defendant had had any contact with him prior to the instant investigation. Shortly after the purchases were made, other officers gave them the defendant's name and, as a result, only the defendant's photograph was requested from police files and viewed for purposes of identification. These procedures were highly suggestive, and, as previously noted, cannot

be defended by reference to the fact that the persons making the identifications were police officers *(see, People v Perez,* 74 NY2d 637; *see also, People v Gordon,* 76 NY2d 595, 599-601, *supra).* Although a *Wade* hearing was conducted, serious identification questions remain because the hearing court curtailed cross-examination concerning the officers' face-to-face encounters with the defendant. This prevented any exploration as to whether an independent source existed for making an in-court identification of the defendant *(see, People v Williamson,* 79 NY2d 799).

Notwithstanding the foregoing, however, and in the exercise of our factual review power, we conclude that the hearing minutes are sufficient to establish that the identifications made by the undercover officers involved in the January 22, 1988, April 28, 1988, and June 15, 1988, transactions were based upon an independent source. With respect to the April 28 and June 15 transactions, the officers testified that they immediately recognized the defendant from their prior face-to-face contact with him in January 1988. This provided a sufficient independent basis for their identifications, and consequently the follow-up photographic viewings do not require reversal as to those sales *(see, People v Morales,* 37 NY2d 262, 271-273; *People v Carter,* 106 AD2d 654, 657).

The January 22 sale itself is more problematic, however, because, at that point, the defendant was unknown to the undercover officers. The defendant was not arrested for this sale until after the later purchases; the question thus becomes whether the taint of the initial photographic identification was attenuated, and how to make that determination. The following quote from *People v Rogers* (52 NY2d 527, 532-533, *cert denied* 454 US 898), although directed to the concerns of the Fourth Amendment, is instructive: "[A]t some point the chain of causation leading from the illegal activity to the challenged evidence may become so attenuated that the 'taint' of the original illegality is removed * * * the detrimental impact of the illegal police action * * * becomes so minute as to no longer justify the penalty of suppression". The terms "illegal" and "penalty" may be inapposite, but in identification cases a reviewing court can nonetheless make use of this analysis and conclude that the detrimental impact of a tainted identification has been dissipated by the time a further identification is made.

Where a tainted photographic viewing has occurred, the result sought to be avoided is a later identification being made

from the previously viewed photograph rather than from other contacts directly connected to the criminal activity charged *(see, People v Allah,* 158 AD2d 605, 606; *People v McMickel,* 105 AD2d 851, 852). The passage of time, usually a factor that works against an accurate identification, has a palliative effect where a tainted viewing has occurred. Periods between the tainted procedure and a further identification which this Court has found sufficient to achieve the desired effect vary; it can be as little as three weeks *(People v Allah, supra),* as much as seven months *(People v Torres,* 137 AD2d 734), or something in between *(People v Young,* 167 AD2d 366 [two months]). Of course, even if no other pretrial identification is made, a court may permit an in-court identification if it is convinced that there is clear and convincing proof that it is based on observations of the suspect other than on the suggestive identification *(People v Ballott,* 20 NY2d 600, 606-607; *People v Torres, supra).*

Here, the tainted January 28 photographic identification confronts us with an uncommon dilemma. No evidence of an independent source for identifying the defendant as the January 22 seller was developed at the hearing, and, as previously noted, these officers had never previously dealt with the defendant at the time of the January purchase. However, the identifying witness here was an undercover police officer who saw the defendant face-to-face twice more, and the earliest of those additional close-range contacts was three months after he viewed the photograph. Thus, we conclude that there was little risk that this trained officer would later identify the defendant at the trial as the January 22 seller from the January 28 photograph or would be unduly influenced thereby. Of course, this does not answer the question of whether there was an independent source for the January 22 identification. While the taint of the photographic viewing may have been dissipated by the time these officers encountered the defendant several months later, their in-court identification could not be based on sufficient contacts prior to or during the crime itself, for they had never seen him before.

Nevertheless, given the facts elicited at the hearing, an exclusion of this identification would blink at reality. If the January 22 contact can serve as an independent source for the April 28 and June 15 identifications, the conclusion is unavoidable that the officers involved would not later misidentify him as the January 22 seller either. Common sense dictates that these identifications must stand or fall together, and we

find that the proof supports the former result. It must be stressed, however, that this narrow exception to the general requirement that there must be proof that the identifying witness had sufficient contacts with the defendant during or before the crime charged to establish an independent source for the identification is limited to the circumstances present in this case *(cf., People v Morales, supra)*.

Accordingly, only the defendant's conviction on the counts of the indictment dealing with the April 12, 1988, and April 19, 1988, transactions are reversed, and the matter is remitted to the Supreme Court, Suffolk County, for an independent source hearing and new trial on those counts *(see, People v Burts,* 78 NY2d 20).

We have reviewed the defendant's remaining contentions, including those raised in his supplemental *pro se* brief, and find them to be either unpreserved for appellate review or without merit.

RITTER, J. (concurring in part and dissenting in part). I agree that the circumstances underlying each of the photographic viewings in this case were highly suggestive. There may be a legitimate police purpose in having an undercover officer make a prompt photographic identification of a suspect in an ongoing investigation, prior to making any arrest, and preserving the photograph in the police file for future use. Here, however, the photographic viewing after the January 22, 1988 transaction occurred six days later, and, as was the case after each subsequent transaction, the identification suffered from all the forbidden attributes of suggestiveness *(see, People v Gordon,* 76 NY2d 595, 599).

I disagree with my colleagues in the majority, however, on the question of whether this Court can, or should, decide the issue of independent source on the basis of the existing record of what I consider to be an incomplete *Wade* hearing. Because of its dynamic and subjective nature, identification evidence is subject to distinctive substantive and procedural protections, and "empirical concerns relating to reliability" *(People v Burts,* 78 NY2d 20, 23). In any case involving an impermissibly suggestive pretrial identification procedure, I believe defense counsel must be given a full opportunity to explore a witness's purported independent basis to make an in-court identification, unless the risk of misidentification is so minimal that we can say, as a matter of law, that there is no need for a *Wade* hearing at all *(see, People v Rodriguez,* 79 NY2d

445; *People v Wharton,* 74 NY2d 921). In my view, the hearing court's erroneous conclusion that the viewings were "confirmatory", and the resulting preclusion of the defendant's opportunity to cross-examine the witnesses on the key issue of independent source, requires reversal of the entire judgment and a new trial, to be preceded by a new *Wade* hearing with respect to each of the transactions for which the defendant was convicted *(see, People v Williamson,* 79 NY2d 799; *People v Burts, supra; People v Minaya,* 183 AD2d 920).

SULLIVAN, J. P., and HARWOOD, J., concur with COPERTINO, J.; RITTER, J., concurs in part and dissents in part in a separate opinion.

Ordered that the judgment is modified, on the law, by vacating the defendant's convictions under counts three, four, five, and six of the indictment, and the sentences imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Suffolk County, for a new trial on those counts, to be preceded by an independent source hearing. The facts have been considered and are determined to have been established.