(July 13, 1993)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARIO VILLANUEVA, Appellant. [600 NYS2d 72] —Appeal from a judgment, Supreme Court, New York County (Edward McLaughlin, J.), rendered September 27, 1989, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 4½ to 9 years, unanimously held in abeyance and the matter remanded for a hearing in accordance herewith.

Following a mistrial by reason of a hung jury, the defendant was retried and convicted of criminal sale of a controlled substance in the third degree.

The sale from which the defendant's conviction stems took place on April 7, 1988. On that date undercover Police Officer Michael Rocco, having made advance arrangements to purchase cocaine, was accompanied in his vehicle by a person named Greco to 400 Central Avenue in Brooklyn. Greco thought that he would find his connection "Izzy" at that address, but Izzy was not there. It was not long, however, before a van driven by someone Greco referred to as "Izzy"[1] pulled up in front of the building, about 25 to 30 feet from Rocco's car. Greco went over to the van and spoke with the driver who then got out of the van, went into the building and, after a brief period, returned to the van. Once he had reentered the vehicle, the driver passed Greco an envelope containing cocaine which Greco delivered to Rocco. Rocco then gave Greco money which Greco in turn transferred to the van driver. No arrest was made immediately or even soon after the transaction. Rather, some five weeks later, on May 13, 1988, Rocco, accompanied by a team of backup officers, went to a corner grocery store located at the intersection of Wyckoff Avenue and Menaham Street in Brooklyn. On entering the store, Rocco saw the defendant working behind the counter, purchased something from him and left. Shortly afterward, two officers from the backup team entered the store and arrested the defendant. He was brought outside the store where he was identified by Rocco as the seller of the cocaine purchased by Rocco on April 7th.

The defendant, whose defense at trial was one of misidentifi-

---

1. It was subsequently learned that the van was, in fact, owned by one Israel Cortes whose name appeared upon a letter box in the lobby of 400 Central Avenue.

cation, moved on three occasions for a *Wade* hearing to test the reliability of Officer Rocco's identification of him, but the hearing was on each occasion denied on the ground that the contested identification had not been the result of a police-arranged identification procedure. This is not defensible conclusion. It is undisputed on the record before the Court that the police, in the weeks preceding the defendant's arrest had come to suspect, for reasons having little if anything to do with the defendant's appearance,[2] that he had been the seller of the cocaine purchased by Rocco on April 7th. Nor can there be any dispute that when the police converged upon the grocery store on May 13th at a time when they knew the defendant would be there, they did so in order to ascertain, by means of having Rocco view the defendant, whether their suspicions could be confirmed with a positive identification. Indeed, there were no other reasons for Rocco and his backup team to visit the grocery when they did. Nevertheless the People attempt to cast Rocco's grocery store encounter with the defendant as "spontaneous". The characterization is, of course, flagrantly at odds with the record which indicates with consummate clarity that the May 13th identification and arrest of the defendant resulted from a carefully planned and executed police operation. Under the circumstances there is no way of avoiding the conclusion that the identification procedure was, in fact, police arranged and as such not entitled to the claimed exemption from judicial scrutiny *(see, People v Newball,* 76 NY2d 587, 591). Indeed, under the circumstances a *Wade* hearing was essential.

It should be stressed that the May 13th identification of the defendant by Rocco was not merely confirmatory. This was not a situation in which a suspect was viewed by a police witness immediately after, or, at the very least, within hours of the incriminating transaction so that the identification procedure could be viewed as an integral part of a law enforcement operation designed to minimize the possibility of an innocent person being taken into custody *(see, People v Wharton,* 74 NY2d 921). Here, more than a month intervened between the crime to which the undercover was witness and the identification procedure. Surely, no one would suggest that the risk of misidentification was in any measure minimized, much less rendered negligable by the conduct of an identification proce-

---

**2.** The suspicions apparently arose from the defendant's close familial and business association with his brother, Freddy Villanueva, whose name, along with that of Israel Cortes, appeared upon a letter box at 400 Central Avenue, and who had recently been arrested for drug-trafficking.

dure so far removed from the undercover's initial and only prior viewing of a previously unknown perpetrator *(see, People v Newball, supra,* at 592 [gap of four weeks held to deprive identification procedure of assurances of reliability present in *Wharton]; see also, People v Gordon,* 76 NY2d 595, 601 [gap of 10 days held to preclude the characterization of an identification procedure as "integral" within the meaning of *Wharton]).* This is particularly true given the fact that the witness, Officer Rocco, in the interim was apparently involved in an investigation the findings of which independently suggested that the defendant was the person referred to as "Izzy" at the time of the sale. The extent to which Officer Rocco's identification of the defendant was the product of what the ongoing investigation suggested, as opposed to his independent recollection of the seller based upon his relatively brief observation of him at a distance of some 30 feet during the April 7 transaction, were matters to be explored at a *Wade* hearing. It is obvious that neither the motion court nor this Court could simply accept on faith the People's representation that the identification obtained as a result of the May 13, 1988 police procedure was free from suggestive taint.

Accordingly, the appeal should be held in abeyance and the matter remanded for a *Wade* hearing. Concur—Murphy, P. J., Milonas, Ellerin, Ross and Kassal, JJ.