83 N.Y.2d 406 (1994)
633 N.E.2d 446
611 N.Y.S.2d 92
The People of the State of New York, Respondent,
v.
Alejandro Mato, Appellant.
Court of Appeals of the State of New York.
Argued February 15, 1994.
Decided March 22, 1994.
John H. Wilson, New York City, and Dana G. Howard for appellant.
Robert M. Morgenthau, District Attorney of New York County, New York City (Elizabeth R. Nochlin and Norman Barclay of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, BELLACOSA and CIPARICK concur with Judge SMITH; Judge LEVINE dissents and votes to affirm in a separate opinion; Judge TITONE taking no part.
*408 SMITH, J.
The primary issue here is whether the trial court erred when it denied defendant's motion for a Wade hearing on the grounds that the identifications by the undercover police officer were confirmatory. Because we conclude that there was an error, we remit the case for a Wade hearing and, if necessary, a new trial.
On July 12, 1989, an undercover police officer was assigned to make a drug purchase along West 160th Street in upper Manhattan. He approached defendant outside 523 West 160th Street and told him that he wanted to purchase drugs. Defendant then summoned another individual who took the undercover officer to a second-floor apartment in 523 West 160th Street where he purchased drugs from a third individual. Defendant was not present in the apartment when the sale was consummated.
Subsequently, the undercover officer prepared a report in which he identified the location of the transaction as 527 West 160th Street. A search warrant was issued based upon this information and, on July 19, 1989, the police entered the wrong building and apartment and errantly arrested a family of four. The officers recognized their error and quickly voided the arrests.
The undercover officer was sent back to the area to obtain the proper address, and he then determined that he had made the July 12 purchase at 523 West 160th Street. Another warrant was issued and, on August 7, 1989, was executed after the officer purchased drugs from two individuals in the second-floor apartment at 523 West 160th Street.
On August 7, prior to the arrest of the defendant, the undercover saw defendant standing in front of the building at 523 West 160th Street. The undercover officer went upstairs and "conducted official business." When he came back downstairs, he had a conversation with defendant which lasted *409 about a minute. The undercover testified that defendant indicated through "a facial movement" and "hand movements" that he recognized the undercover officer. The two had a conversation both before and after the undercover went back upstairs "on official police business." Although defendant was apparently not involved in any purchase of drugs on August 7, he was arrested in the hallway of 523 West 160th Street for criminal sale of a controlled substance in the second degree based on the July 12 transaction. Following his arrest, defendant was viewed by the undercover both in front of the building and at the police station.
At the trial, the undercover, in addition to testifying about the July 12th transaction, was permitted to testify that he saw defendant on August 7 both on the street and at the precinct. The trial court did not permit testimony about the nature of conversations held between the undercover and defendant on August 7. During a portion of the undercover's testimony, a discussion was held at the bench between the court, the prosecutor and the defense attorney, apparently on defendant's objection to the prosecutor's question as to how defendant showed his recognition of the undercover on August 7. That discussion was not recorded and the defense attorney's efforts to make a record were repeatedly rebuffed by the trial court.[*]
Defendant's pretrial motion for a Wade hearing was denied. After a jury trial, defendant was convicted of criminal sale of a controlled substance in the second degree.
On defendant's appeal, the Appellate Division unanimously affirmed Supreme Court's judgment, holding that the trial court properly denied defendant's motion to suppress the identification at the precinct because notwithstanding the more than three-week interval, the identification was "confirmatory."
Here, defendant contends that Supreme Court erred when it denied his request for a Wade hearing and that the Court violated his right to due process and a fair trial when it refused to allow defense counsel to raise issues of credibility by questioning one of the police officers about the issuance of a search warrant for the wrong address. The People contend *410 that no Wade hearing was necessary and that there was no violation of due process.
Defendant is entitled to a Wade hearing for several reasons. First, this case involves a situation similar to that in People v Newball (76 N.Y.2d 587). There this Court emphasized that a four-week lapse of time between the initial encounter and later identification by the police officer called into question the reliability of the identification and required both a notice from the People that identification testimony would be offered (see, CPL 710.30 [1] [b]) and a hearing.
Second, in People v Wharton (74 N.Y.2d 921, 922-923), in denying a motion for a Wade hearing where the viewing by a trained police officer "occurred at a place and time sufficiently connected and contemporaneous to the arrest itself as to constitute the ordinary and proper completion of an integral police procedure," this Court stated that a Wade hearing is necessary "[w]here the nature and circumstances of the encounter and identification [so] warrant." In Wharton, the "assurances of reliability" of the identification were that the identifying officer (1) transacted business with the defendant knowing that he would be arrested shortly thereafter and (2) the same officer identified the defendant at the police station only three hours after the transaction (id., at 923).
In this case, the undercover first transacted business with defendant for minutes only on July 12. By the People's own admission, he saw defendant "standing outside" as he passed the place of the transaction, but mistakenly wrote 527 West 160th Street instead of 523 West 160th Street. A search warrant was issued and executed for the wrong address based on the undercover's error. Finally, it was not until August 7, 26 days later, that the undercover returned to the correct address and purchased more drugs, a transaction in which defendant apparently did not participate. Defendant was, however, arrested on August 7 and displayed to the undercover while handcuffed. Several minutes later, while at the precinct, the undercover viewed defendant again. These facts woefully fail the Wharton test, given the passage of time, the conceded error by the undercover, and the suggestiveness of the August 7 identifications of defendant by the undercover. Moreover, in Newball, four weeks elapsed between the identifications of the defendant and that period was held to be critically infirm. Here, the time expired between the undercover's identifications is only days short of the period in Newball. Additionally, as we made clear in Wharton, the mere *411 labelling of an identification as "confirmatory" will not obviate the need for Wade hearings. Case-by-case analyses of the facts and circumstances in each case remain necessary (see, People v Gordon, 76 N.Y.2d 595, 601 ["(c)omprehensive analysis, not superficial categorization, ultimately governs"]).
Third, it should be clear that the testimony as to the identifications on August 7 is permissible pursuant to CPL 60.30 to strengthen the People's case only if it refers back to the original transaction of July 12. In other words, the testimony by the undercover that he saw defendant handcuffed outside of the building and also identified him at the police station cannot, on the facts shown here, be considered confirmatory of an earlier viewing on August 7 but must relate back to the July 12th transaction. Thus CPL 60.30 authorizes a witness to testify about an identification of the defendant at a showup or lineup only in addition to the incriminating encounter, that is only when that witness testifies "he observed the person claimed by the people to be the defendant either at the time and place of the commission of the offense or upon some other occasion relevant to the case." The August 7 observation of the defendant by the undercover had no relevance to the July 12 sale and, accordingly, that portion of CPL 60.30 referring to the date of the commission of the offense must be satisfied.
Finally, acknowledging the precarious nature of the process of identifying individuals in the fast-paced environment of drug transactions, we have noted that misidentifications must be tirelessly avoided to prevent ensnaring innocent individuals in the criminal process notwithstanding the well-meaning intentions of trained officers (see, People v Gordon, 76 N.Y.2d 595, 601, supra). Thus, showup evidence should be avoided and "at the very least, subjected to Wade hearings" to safeguard accuracy (id., at 601).
Defendant is thus entitled to a Wade hearing and, if he prevails at the hearing, to a new trial. If the People prevail at the Wade hearing, the judgment should be amended to reflect that result.
Defendant's argument as to the cross-examination of the police officer lacks merit.
Accordingly, the order of the Appellate Division should be modified by remitting the case to Supreme Court, New York County, for further proceedings in accordance with this opinion and, as so modified, affirmed.
*412 LEVINE, J. (dissenting).
I respectfully dissent. Both the IAS Court and the Appellate Division (190 AD2d 513) found in this case that the August 7, 1989 postarrest, drive-by viewing of defendant by the undercover officer (on his own initiative) and the precinct viewing of defendant by him at the direction of the police backup team less than a half hour later were "confirmatory" identifications and, therefore, did not require a Wade hearing (United States v Wade, 388 US 218) to determine whether any in-court identification of defendant by the undercover officer would be tainted by the suggestiveness of the earlier identification procedures. To be sure, the lower courts' labeling of an identification as confirmatory does not prevent this Court from determining, as a matter of law, that the evidence conclusively shows that the purpose of the viewing arranged by the police was to identify the suspect as the perpetrator of the crime, thereby requiring a Wade hearing (see, People v Gordon, 76 N.Y.2d 595, 600-601; People v Wharton, 74 N.Y.2d 921, 923). However, the concept of a confirmatory identification had been thoroughly refined when the courts below held that the postarrest viewings in this case were confirmatory.
Thus, in People v Morales (37 N.Y.2d 262) this Court approved a station house showup on the basis of the finding of the trial court that "the viewing had not been for the purpose of identification but for [the undercover officer] to assure himself that his backup team had arrested the man he intended" (id., at 271). In People v Wharton (supra), we similarly characterized the postarrest drive-by and station house viewing by an undercover officer as confirmatory, and a proper "standard police operational procedure", to insure "that an innocent person was not being detained by reason of a mistaken arrest" (74 NY2d, at 923). Essentially, we have upheld as confirmatory an identification by a police officer (i.e., a trained observer) made shortly after the suspect's arrest at the viewer's direction by other officers. Also, the initiation of the arrest by the viewing officer likewise must come shortly after and as the result of the last uncontrolled encounter between that officer and the suspect, such as during a drug transaction between the suspect and the viewing officer acting in an undercover capacity. We have, however, rejected the claim that a postarrest identification was confirmatory when there was a significant interval between the last uncontrolled encounter and the postarrest showup (see, People v Newball, 76 N.Y.2d 587; People v Gordon, supra). We recognized that, *413 with such a time gap, there would be a serious risk of misidentification even by a trained observer, hence the Wade safeguards against suggestive procedures at that next, controlled identification would be necessary (see, id.).
In this case, the uncontradicted testimony of the undercover officer at the trial was that the actual identification of defendant as a criminal participant in the July 12, 1989 cocaine sale took place earlier on August 7, 1989, when the officer, still operating undercover, went back to the site of the prior drug transaction to attempt another purchase just before the execution of a search warrant the police had already obtained. The undercover officer encountered defendant in the same location outside the premises where they first met on July 12 and recognized him as the "steerer" in the July 12 sale. The officer testified that defendant in turn spoke and acted as though he recognized the officer from their single previous contact. After the undercover officer succeeded in making another purchase of cocaine from defendant's codefendant, he spoke to defendant again on the way out and, after departing, radioed a detailed description of defendant and his confederate to the police backup team. The raid of the drug sale premises then took place and defendant and his codefendant were arrested in the building where the cocaine purchases were made.
The undercover officer's spontaneous identification of defendant on August 7 as he entered the targeted premises to make another cocaine purchase did not trigger the necessity of a Wade hearing, unless People v Gissendanner (48 N.Y.2d 543) is no longer good law. Gissendanner and its numerous progeny hold that no Wade hearing is required for a victim or undercover officer identification which is not the product of a police-arranged presentation of the suspect to the viewer for the specific purpose of establishing the identity of the perpetrator of a crime (see, People v Gissendanner, 48 NY2d, at 552, supra; People v Rios, 156 AD2d 397, lv denied 75 N.Y.2d 923; People v Rose, 152 AD2d 924, lv denied 74 N.Y.2d 852; People v Parker, 127 AD2d 614, lv denied 69 N.Y.2d 1008; People v Belushi, 114 AD2d 463, lv denied 67 N.Y.2d 880; People v Medina, 111 AD2d 190; People v Dukes, 97 AD2d 445). Uncontestedly, defendant's presence at the site of the prior drug sale when he was identified on August 7 by the undercover officer before being arrested was not police arranged, and was totally free of any of the aspects of contrived suggestiveness underlying the Wade decision. Defendant was there at his choice, not that of *414 the police. The undercover officer's prearrest identification of defendant on August 7 at the drug sale premises was a spontaneous act of recognition by the officer, apparently spontaneously reciprocated by defendant. As such, that prearrest, uncontrolled viewing was clearly not subject to an identification hearing under the authorities cited.
After thus identifying defendant during the course of his purchase of cocaine at the drug sale premises on August 7, the undercover officer set in motion the drug raid which immediately followed by radioing to his backup team that he had made a purchase and giving them a precise description of defendant and his codefendant. The uncontradicted testimony of the undercover officer at the trial amply supported an inference that the purpose of both of his postarrest viewings of defendant, within well under an hour of their uncontrolled prearrest street encounter, was confirmatory and not to identify defendant in the first instance as a criminal participant in the July 12 sale. The officer testified that, after receiving word that the suspects had been arrested and that he was to meet the raiding party at the precinct, the officer independently decided to drive to the arrest scene where he observed defendant in custody. At that point in his narrative of the chain of events his testimony was as follows:
"Q. And did the team have the correct man in custody?
"A. Yes they did."
On both direct and cross-examination, the undercover officer described that his viewing at the precinct within minutes after seeing defendant at the arrest scene was a standard "confirmatory I.D." by an undercover officer after a narcotics arrest.
In substance, then, the undercover officer testified that his postarrest viewings of defendant were merely to insure that the backup team had arrested the same person the officer had, shortly before, spontaneously identified as a participant in the July 12 drug sale. Thus, as in People v Morales (supra), by the time the undercover officer made his postarrest drive-by and precinct viewings of defendant, "identification [of defendant as a participant in the July 12 cocaine sale] was behind him" (37 NY2d, at 272). Instead, the postarrest viewings were merely to "len[d] assurance that an innocent person was not being detained by reason of a mistaken arrest" (People v Wharton, 74 NY2d, at 923, supra). Because the uncontradicted testimony *415 of the undercover agent supports the conclusion that the postarrest showups of defendant were truly confirmatory in nature, the finding of the IAS Court to that effect, affirmed by the Appellate Division, should not be disturbed by this Court.
The majority's concern over the possibility of a misidentification because of the lapse of time between the July 12 drug transaction which defendant participated in and the undercover officer's prearrest spontaneous identification of defendant at the drug sale site on August 7 is understandable. But the purpose of a Wade hearing is not to prevent all misidentifications, but to prevent a misidentification attributable to suggestive police pretrial identification procedures (see, United States v Wade, 388 US, at 229-235, supra). As previously discussed, the spontaneous identification of defendant at the drug sale site before he was arrested was completely free of both any police arrangements and any suggestive conditions which might require a Wade hearing. The risk of misidentification by the lapse of time was fully explored at the trial by vigorous and searching cross-examination of the undercover officer, and it was well within the jury's province to credit the undercover officer's testimony and conclude that his identification of defendant was accurate.
Moreover, the majority in my view incorrectly concludes that, under CPL 60.30, the postarrest identifications of defendant by the undercover officer had to relate back to and be confirmatory of the July 12 drug purchase rather than the prearrest August 7 street identification of defendant at the drug sale premises. Under CPL 60.30, an eyewitness is permitted to testify to an additional pretrial identification when the witness has testified to observing the defendant either at the time and place of the commission of the crime "or upon some other occasion relevant to the case". The undercover officer's August 7 encounter with defendant at the site of the July 12 drug sale and the mutual recognition by the officer and defendant of their single previous encounter was highly relevant and admissible evidence to establish defendant's identity as a participant in the July 12 cocaine sale (see, People v Carter, 77 N.Y.2d 95, 107, cert denied 499 US 967; see also, People v Molineux, 168 N.Y. 264; People v Jamerson, 119 AD2d 588, lv denied 68 N.Y.2d 757).
For all the foregoing reasons, I vote to uphold the order of the Appellate Division affirming defendant's conviction.
Order modified by remitting the case to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
NOTES
[*] It should be noted that any discussion off the record between the court, prosecutor and defendant may leave an appellate court at a disadvantage in reviewing a point on appeal. Where, as here, the defense attorney is also precluded from making a record, the disadvantage is compounded.