*412 Levine, J.
(dissenting). I respectfully dissent. Both the IAS Court and the Appellate Division (190 AD2d 513) found in this case that the August 7, 1989 postarrest, drive-by viewing of defendant by the undercover officer (on his own initiative) and the precinct viewing of defendant by him at the direction of the police backup team less than a half hour later were "confirmatory” identifications and, therefore, did not require a Wade hearing (United States v Wade, 388 US 218) to determine whether any in-court identification of defendant by the undercover officer would be tainted by the suggestiveness of the earlier identification procedures. To be sure, the lower courts’ labeling of an identification as confirmatory does not prevent this Court from determining, as a matter of law, that the evidence conclusively shows that the purpose of the viewing arranged by the police was to identify the suspect as the perpetrator of the crime, thereby requiring a Wade hearing (see, People v Gordon, 76 NY2d 595, 600-601; People v Wharton, 74 NY2d 921, 923). However, the concept of a confirmatory identification had been thoroughly refined when the courts below held that the postarrest viewings in this case were confirmatory.
Thus, in People v Morales (37 NY2d 262) this Court approved a station house showup on the basis of the finding of the trial court that "the viewing had not been for the purpose of identification but for [the undercover officer] to assure himself that his backup team had arrested the man he intended” (id., at 271). In People v Wharton (supra), we similarly characterized the postarrest drive-by and station house viewing by an undercover officer as confirmatory, and a proper "standard police operational procedure”, to insure "that an innocent person was not being detained by reason of a mistaken arrest” (74 NY2d, at 923). Essentially, we have upheld as confirmatory an identification by a police officer (i.e., a trained observer) made shortly after the suspect’s arrest at the viewer’s direction by other officers. Also, the initiation of the arrest by the viewing officer likewise must come shortly after and as the result of the last uncontrolled encounter between that officer and the suspect, such as during a drug transaction between the suspect and the viewing officer acting in an undercover capacity. We have, however, rejected the claim that a postarrest identification was confirmatory when there was a significant interval between the last uncontrolled encounter and the postarrest showup (see, People v Newball, 76 NY2d 587; People v Gordon, supra). We recognized that, *413 with such a time gap, there would be a serious risk of misidentification even by a trained observer, hence the Wade safeguards against suggestive procedures at that next, controlled identification would be necessary (see, id.).
In this case, the uncontradicted testimony of the undercover officer at the trial was that the actual identification of defendant as a criminal participant in the July 12, 1989 cocaine sale took place earlier on August 7, 1989, when the officer, still operating undercover, went back to the site of the prior drug transaction to attempt another purchase just before the execution of a search warrant the police had already obtained. The undercover officer encountered defendant in the same location outside the premises where they first met on July 12 and recognized him as the "steerer” in the July 12 sale. The officer testified that defendant in turn spoke and acted as though he recognized the officer from their single previous contact. After the undercover officer succeeded in making another purchase of cocaine from defendant’s codefendant, he spoke to defendant again on the way out and, after departing, radioed a detailed description of defendant and his confederate to the police backup team. The raid of the drug sale premises then took place and defendant and his codefendant were arrested in the building where the cocaine purchases were made.
The undercover officer’s spontaneous identification of defendant on August 7 as he entered the targeted premises to make another cocaine purchase did not trigger the necessity of a Wade hearing, unless People v Gissendanner (48 NY2d 543) is no longer good law. Gissendanner and its numerous progeny hold that no Wade hearing is required for a victim or undercover officer identification which is not the product of a police-arranged presentation of the suspect to the viewer for the specific purpose of establishing the identity of the perpetrator of a crime (see, People v Gissendanner, 48 NY2d, at 552, supra; People v Rios, 156 AD2d 397, lv denied 75 NY2d 923; People v Rose, 152 AD2d 924, lv denied 74 NY2d 852; People v Parker, 127 AD2d 614, lv denied 69 NY2d 1008; People v Belushi, 114 AD2d 463, lv denied 67 NY2d 880; People v Medina, 111 AD2d 190; People v Dukes, 97 AD2d 445). Uncontestedly, defendant’s presence at the site of the prior drug sale when he was identified on August 7 by the undercover officer before being arrested was not police arranged, and was totally free of any of the aspects of contrived suggestiveness underlying the Wade decision. Defendant was there at his choice, not that of *414 the police. The undercover officer’s prearrest identification of defendant on August 7 at the drug sale premises was a spontaneous act of recognition by the officer, apparently spontaneously reciprocated by defendant. As such, that prearrest, uncontrolled viewing was clearly not subject to an identification hearing under the authorities cited.
After thus identifying defendant during the course of his purchase of cocaine at the drug sale premises on August 7, the undercover officer set in motion the drug raid which immediately followed by radioing to his backup team that he had made a purchase and giving them a precise description of defendant and his codefendant. The uncontradicted testimony of the undercover officer at the trial amply supported an inference that the purpose of both of his postarrest viewings of defendant, within well under an hour of their uncontrolled prearrest street encounter, was confirmatory and not to identify defendant in the first instance as a criminal participant in the July 12 sale. The officer testified that, after receiving word that the suspects had been arrested and that he was to meet the raiding party at the precinct, the officer independently decided to drive to the arrest scene where he observed defendant in custody. At that point in his narrative of the chain of events his testimony was as follows:
"Q. And did the team have the correct man in custody?
"A. Yes they did.”
On both direct and cross-examination, the undercover officer described that his viewing at the precinct within minutes after seeing defendant at the arrest scene was a standard "confirmatory I.D.” by an undercover officer after a narcotics arrest.
In substance, then, the undercover officer testified that his postarrest viewings of defendant were merely to insure that the backup team had arrested the same person the officer had, shortly before, spontaneously identified as a participant in the July 12 drug sale. Thus, as in People v Morales (supra), by the time the undercover officer made his postarrest drive-by and precinct viewings of defendant, "identification [of defendant as a participant in the July 12 cocaine sale] was behind him” (37 NY2d, at 272). Instead, the postarrest viewings were merely to "len[d] assurance that an innocent person was not being detained by reason of a mistaken arrest” (People v Wharton, 74 NY2d, at 923, supra). Because the uncontradicted testi *415 many of the undercover agent supports the conclusion that the postarrest showups of defendant were truly confirmatory in nature, the finding of the IAS Court to that effect, affirmed by the Appellate Division, should not be disturbed by this Court.
The majority’s concern over the possibility of a misidentification because of the lapse of time between the July 12 drug transaction which defendant participated in and the undercover officer’s prearrest spontaneous identification of defendant at the drug sale site on August 7 is understandable. But the purpose of a Wade hearing is not to prevent all misidentifications, but to prevent a misidentification attributable to suggestive police pretrial identification procedures (see, United States v Wade, 388 US, at 229-235, supra). As previously discussed, the spontaneous identification of defendant at the drug sale site before he was arrested was completely free of both any police arrangements and any suggestive conditions which might require a Wade hearing. The risk of misidentification by the lapse of time was fully explored at the trial by vigorous and searching cross-examination of the undercover officer, and it was well within the jury’s province to credit the undercover officer’s testimony and conclude that his identification of defendant was accurate.
Moreover, the majority in my view incorrectly concludes that, under CPL 60.30, the postarrest identifications of defendant by the undercover officer had to relate back to and be confirmatory of the July 12 drug purchase rather than the prearrest August 7 street identification of defendant at the drug sale premises. Under CPL 60.30, an eyewitness is permitted to testify to an additional pretrial identification when the witness has testified to observing the defendant either at the time and place of the commission of the crime "or upon some other occasion relevant to the case”. The undercover officer’s August 7 encounter with defendant at the site of the July 12 drug sale and the mutual recognition by the officer and defendant of their single previous encounter was highly relevant and admissible evidence to establish defendant’s identity as a participant in the July 12 cocaine sale (see, People v Carter, 77 NY2d 95, 107, cert denied 499 US 967; see also, People v Molineux, 168 NY 264; People v Jamerson, 119 AD2d 588, lv denied 68 NY2d 757).
For all the foregoing reasons, I vote to uphold the order of the Appellate Division affirming defendant’s conviction.
*416 Chief Judge Kaye and Judges Simons, Bellacosa and Ciparick concur with Judge Smith; Judge Levine dissents and votes to affirm in a separate opinion; Judge Titone taking no part.
Order modified by remitting the case to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.