Appeal from a judgment of the Onondaga County Court (Donald E. Todd, A.J.), rendered January 11, 2013. The judgment convicted defendant, upon a jury verdict, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree.
It is hereby ordered that the case is held, the decision is reserved and the matter is remitted to Onondaga County Court for a hearing pursuant to CPL 710.60 (4).
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) and criminal possession of a controlled substance in the third degree (§ 220.16 [1]). Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant’s contention that the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
We agree with defendant that he was entitled to a pretrial hearing to test the reliability of the police identification of him as the seller of cocaine to an undercover police officer during a transaction that occurred more than a year prior to defendant’s arrest. Pursuant to a meeting arranged by a confidential informant, two undercover officers from the Onondaga County Sheriffs Department met with defendant on April 25, 2011 to purchase cocaine. Approximately five minutes prior to the meeting, one of the officers (hereafter, undercover officer) viewed a photograph allegedly depicting defendant. After the transaction, the undercover officer returned to the Sheriffs Department and reviewed the photograph again. The incident report completed by the undercover officer the day after the transaction contained the entry “UNKNOWN” for the suspect’s name. In a subsequent, but undated “Narrative Supplement” report, the undercover officer described the use of the single photograph to identify defendant before and after the transaction. Defendant was not arrested until more than a year later, on May 3, 2012, by a police officer from a different police agency (arresting officer), i.e., the Syracuse Police Department. *1585 Importantly, the arresting officer had not participated in the undercover transaction and made the arrest solely on the basis of an outstanding warrant. On the arrest report, in the box reserved for “ID Procedure,” the arresting officer checked “None.” No postarrest identification procedures were conducted by the People prior to trial. Unlike the typical “buy and bust” operation with a postarrest station house identification, the undercover officer made no effort to “assure himself that [the Syracuse Police Department] had arrested the man he intended” (People v Morales, 37 NY2d 262, 271 [1975]).
Defendant’s pretrial motion for discovery demanded “[a]ny photograph . . . purporting to contain the likeness of a human being shown to [prospective] witnesses.” The People’s response stated “None known to exist.” The single photograph allegedly used by the undercover officer to identify defendant has not been produced by the People.
Defendant moved to suppress the People’s identification testimony and, in the alternative, requested a hearing to determine the admissibility of any such evidence. County Court summarily denied suppression and defendant’s request for a Wade hearing on the ground that the identification procedure was “confirmatory.”
We begin by recognizing that the primary concern with police identification procedures is that they should provide “assurance that an innocent person [has not been] detained by reason of a mistaken arrest” (People v Wharton, 74 NY2d 921, 923 [1989]). Thus, a contemporaneous postarrest station house viewing or prompt on the scene confrontation generally provides such assurance (see id. at 922-923). Here, following the drug transaction, the undercover officer did not observe defendant again until the trial, which was approximately a year and a half after the transaction. That lapse of time is in stark contrast to the typical situation where an undercover officer identifies the arrestee at the police station contemporaneously with the drug transaction (see e.g. People v Irving, 162 AD2d 280, 280-281 [1990], lv denied 76 NY2d 940 [1990]).
While we recognize that a “Wade hearing” is often linked, nearly exclusively, with the concept of “suggestiveness,” we conclude that a defendant is entitled to CPL 710.30 (1) (b) notice and the opportunity to move to suppress identification testimony pursuant to CPL 710.60 in order to test the reliability of such testimony (see People v Mato, 83 NY2d 406, 410 [1994]). While “suggestiveness” may play an important role in the reliability analysis, it is not the exclusive criterion. The list of criteria involved in making a reliability determination may *1586 include, but is not limited to: the lapse of time between the criminal transaction and the arrest, the opportunity to observe the suspect during the transaction, the duration of the interaction, and the facts and circumstances of the interaction with the suspect. It is well settled that “the mere labelling of an identification as ‘confirmatory’ will not obviate the need for Wade hearings. Case-by-case analyses of the facts and circumstances in each case remain necessary” (id. at 410-411). “Comprehensive analysis, not superficial categorization, ultimately governs” (People v Gordon, 76 NY2d 595, 601 [1990]).
Under the circumstances presented here, we conclude that the identification of defendant in this case cannot be said to have the same assurances of reliability that were found to exist in Wharton that would justify the summary denial of a hearing pursuant to CPL 710.60 (see People v Newball, 76 NY2d 587, 592 [1990]). We therefore hold the case, reserve decision, and remit the matter to County Court for a hearing pursuant to CPL 710.60 (4) to test the reliability of the People’s identification testimony.
All concur except Lindley, J., who concurs in the result in the following memorandum.